WILLIAM HARRIS, plaintiff in error, *vs.* JOHN J. W. GLENN *et al.*, defendants in error.

1. The act of February 27th, 1874, declaring that property exempted from levy and sale by section 2040 of the Code, shall not be exempt as against the purchase money, applies to a mortgage executed for the purchase money of land prior to the passage of the act.

2. Debtors have no vested right not to pay their debts. Exemption of their property from legal process for the satisfaction of creditors is but a privilege; mere grace and favor, dependent on the will of the state. Statutory exemptions are subject to be reduced or revoked by the legislature, and constitutional exemptions, by the people, through a change of the organic law.

3. The judgment foreclosing a mortgage is a final adjudication that the debt is due and that the property is subject to pay it. It is a specific judgment

against the specific property, and if the mortgagor had the defense of exemption, and meant to urge it, should he not have presented it in answer to the rule *nisi?* *Quære.*

4. After judgment of foreclosure has been rendered, and after the law granting exemption has been repealed, it is too late to have a portion of the land laid off, and, for the first time, assert exemption against the mortgage debt.

5. It is too late, also, to say that the debt was not due according to the real contract between the parties, or that payments had been made before foreclosure which were not credited.

6. Land subject to levy and sale for purchase money, and under mortgage for the same, is not disincumbered so long as any of the purchase money remains unpaid. No part of the tract is free until the whole debt is discharged. See *Sale vs. Wingfield,* decided at the present term:

Homestead. Vendor and purchaser. Laws. Debtor and creditor. Constitutional law. Mortgage. Before Judge HALL. Newton county. At Chambers. January 8th, 1876.

Reported in the opinion.

EMMETT & WOMACK, for plaintiff in error.

McCAY & TRIPPE; J. C. BARTON, for defendants.

BLECKLEY, Judge.

In 1871 the vendor of certain lands conveyed the same by deed to the vendee. At the same time the latter gave to the former a mortgage upon it to secure the purchase money. Part of the money was paid in 1872, part in 1873, and part in March, 1874. These payments, altogether, amounted to about two-fifths of the price. In March, 1875, the vendor commenced the ordinary proceeding at law, to foreclose the mortgage for the balance. A rule *nisi* was granted; and in September thereafter, the mortgage was foreclosed in due form by rule absolute. In November following, the mortgage *fi. fa.,* founded on this foreclosure, was levied upon the land. While the sheriff's advertisement for sale was running, the vendee made out a schedule claiming certain personalty and seventy acres of the land as exempt, returned the same to the ordinary, and had it recorded, in terms of section 2042 of the

Code. He also had the seventy acres surveyed and a plat thereof made and recorded, as required by section 2042 of the Code. The whole tract contained two hundred and fifty acres. The claim of exemption was not under the constitution, but under section 2040 of the Code, the vendee being the head of a family and having four children under sixteen years of age. When he created the debt he had seven children under that age. The sheriff, on the 4th of January, 1876, sold the whole tract under the levy, disregarding the claim of exemption, full notice of which was given at the time and place of sale before the property was sold. The mortgagee became the purchaser; and it is to restrain the sheriff from putting him in possession of the seventy acres claimed as exempt that the injunction is prayed for. The chancellor denied the injunction, and we affirm his judgment.

1. It has already been ruled by this court that the act of 1874, modifying the Code so as to exclude the exemption right against a debt for purchase money, applies to debts made prior to the passage of the act, as well as to those made subsequently: *Sparger vs. Cumpton*, 54 *Georgia Reports*, 355. We have not been called upon to review that decision, and we are apprised of no reason for distrusting its soundness.

2. But the point has been made that the act thus construed is unconstitutional as divesting vested rights. Debtors have no vested right not to pay their debts. What they have and what they acquire the state may subject to legal process for the satisfaction of creditors. If the state will furnish the process and allow it to run, nothing that debtors own is beyond its reach. There is no fastness that can afford shelter against the public authority. Exemption of property from levy and sale for the payment of debts, is but a privilege for the time being—mere grace and favor, dependent on the will of the state. An exemption which exists by statute may be reduced or withdrawn by statute; and even constitutional exemptions may be terminated by the same power that created them, the people, expressing their sovereign will by amendment of the organic law. Exemption is but a statutory or

constitutional shield, which being removed, the exposure to process is the same as if it had never been interposed: 13 Wis., 238; Cooley on Con. Lim., 383; 33 *Georgia Reports, Supplement*, 38. So long as the law exists by which exemption is granted and secured, the right to enjoy the exemption exists and should have the same protection from judicial tribunals that is accorded to any other right. But when the law is gone the right is gone.

3. In the case of a mortgage on land it may be questioned whether the right should not be asserted before judgment has passed for foreclosure. The judgment goes against the specific property, and is a mandate to the sheriff to sell it: Code, section 3698; 13 *Georgia Reports*, 389; 18 *Ibid.*, 488; 3 Wall., 334.

4. Be this as it may, it is certainly too late to move in the matter, not only after foreclosure but after the law has been repealed on which the exemption depended. The repeal was in February, 1874, and not until December, 1875, did the mortgagor make any claim to the exemption. Under the provisions of the Code he might have asserted his claim and had the property laid off as soon as he acquired title to the land. There was no compulsion upon him to defer it from 1871 to 1875. He acted voluntarily, and must take the consequences of his procrastination. It is not certain, however, that his situation would have been any better after the act of 1874 was passed, if he had before that time claimed the exemption and had it laid off. Precisely what effect that would have had may be left undetermined.

5. The bill alleges that according to the real contract between the parties, though otherwise reduced to writing, the mortgage debt was not due, and that certain payments were made before the judgment of foreclosure which were not credited. These questions were concluded by the judgment, to say nothing, as to the former, of the rule by which all cotemporaneous stipulations are swallowed up in the writing. It does not appear that the notes, or the mortgage given to

secure them, were written otherwise than as both parties intended they should be written.

6. The bill goes, in part, on the theory that as much of the purchase money has been paid, *some* of the land is paid for in full, and as to that much the debt should not be treated as a debt for purchase money. The principle of apportionment is invoked. An adverse decision on this point has already been made during the present term, in a case which is cited in the head-note.

Judgment affirmed.