Bentley v. Jordan.

3L 353
6L 661
8L 16
10L 113
11L 157
3pi 285

L. M. BENTLEY v. STEPHEN JORDAN et als.

1. HOMESTEAD. *Purchase money.* Under the homestead law of this State the homestead may be subjected to the satisfaction of a debt contracted for the purchase of the land in which the homestead right has been acquired, although the debt may have been changed in form by a new note with personal security, and at a higher though legal rate of interest, and although all the residue of the land has been taken by a creditor against whom the homestead exemption was effective.

2. SAME. *Same.* The purchaser of land at a master's sale, under a decree enforcing a vendor's lien, paid to the master on his purchase notes the amount required to satisfy the vendor's lien and costs of suit, and executed to the defendant, who was entitled to the residue of the purchase money, a new note for such residue on time, with personal security, and at a higher though legal rate of interest, after which the land was seized by attachment in favor of a general creditor, against whom the homestead exemption was good, and then by the payee of the new note. Held, that the latter could subject the homestead to the satisfaction of the debt for the purchase money, although the general creditor had a prior lien on the residue of the land, the proceeds of such residue being insufficient to satisfy both debts.

23—VOL. 3.

3. SAME. *Chancery practice and pleadings. Sale free from equity of redemption.* When the homestead cannot be set apart, and it becomes necessary for a court of chancery to sell the land for the payment of debts, the court may order the sale upon the terms of the payment of $1,000 in cash for reinvestment in a homestead, and the residue in instalments on time, in accordance with the statute, free from the equity of redemption.

### FROM MAURY.

Appeal from the Chancery Court at Columbia. W. S. FLEMING, Ch.

G. T. HUGHES, W. B. GORDON and A. COOPER for complainant.

I. N. BARNETT for defendant.

COOPER, J., delivered the opinion of the court.

In December, 1868, R. B. Moore sold to R. J. Polk a tract of land containing about 190 acres, partly for cash and partly on time. On the 27th of March, 1871, Moore filed a bill against Polk to enforce his lien for unpaid purchase money, and obtained a decree under which, on the 5th of February, 1872, the land was sold by the clerk and master, and bought by Stephen Jordan. On the 27th of February, 1873, Jordan, having paid all of the purchase money except $1,327.66, which was the excess of his bid over Moore's debt and costs, executed his note of that date, due January, 1874, to R. J. Polk for the amount of the excess, with Benjamin Harrison and F. M. Vaughan

as his sureties, the note calling for interest at the rate of· ten per cent. per annum from date until paid. Thereupon the clerk and master reported that Jordan had paid the purchase money in full, the report was confirmed without exception, and title to the land divested and vested in Jordan. Afterward, on the 30th of August, 1873, Jordan, by voluntary deed, conveyed 115 acres of the land to his wife and children. On the 4th of April, 1874, L. M. Bentley, a creditor of Jordan for several thousand dollars, filed the original bill in this cause against Jordan, his wife and children, charging that the voluntary conveyance was fraudulent and void, and praying and obtaining an attachment on the whole tract of 190 acres for the security of his debt. On the 10th of April, 1874, R. J. Polk, for the use of L. E. Polk, filed a bill against the same parties, and also against Harrison and Vaughan as sureties, and L. M. Bentley, based on the note of $1,327.66, charging fraud in the voluntary conveyance, praying and obtaining an attachment, and asking for a personal decree against the principal and sureties on the note. Subsequently, other creditors filed bills to subject the land, upon similar ground, to the satisfaction of their several debts. The attachments were levied on the land in the order of priority in which the bills were filed. The defendants, Jordan and wife, in their answer, claimed a homestead right in the land. On final hearing the Chancellor declared the conveyance to the wife fradulent, gave the several creditors decrees for their debts, and subjected the land to the satisfaction thereof in the order

of priority of the filing of the bills. He was also of opinion, and so decreed, that Jordan and wife were entitled to the homestead right; that the homestead could not be laid off in kind because the value of the improvements exceeded the homestead exemption; that the land should be sold free from redemption upon time, except that $1,000, the extent of the homestead exemption, be paid by the purchaser in cash. The land was sold accordingly, and did not sell for a price sufficient to pay the demands of Bentley and Polk, after deducting $1,000, the homestead exemption. Upon application of Jordan and wife, the Chancellor ordered this fund to be paid to them upon their receipt. All parties acquiesced in these decrees except Polk, Harrison and Vaughan, against the two latter of whom a decree had been rendered in favor of the former for the amount due upon the Jordan note. These parties have brought up the case by writ of error.

The appellants insist that the note was given for the unpaid purchase money of the land in controversy, and that Polk has a vendor's lien or equity for its payment superior to the lien of Bentley's attachment. But it has long been settled in this State that the equitable lien of the vendor, which is recognized by the court of chancery after an absolute conveyance of the land to the vendee, may be waived, and that the taking of a note for the purchase money with personal security, raises a presumption of waiver. *Marshall* v. *Christmas*, 3 Hum., 616. The presumption, it is true, may be rebutted by evidence, but in this case there is no evidence in rebuttal. It has also

been held that the vendor in such a case has no priority over other creditors of the vendee, who may consequently acquire a specific lien on the land by legal proceedings superior to the mere equity of the vendor, although they have notice of the equity. *Roberts* v. *Rose,* 2. Hum., 145. Upon either of these grounds the Chancellor's decree in favor of Bentley, so far as the point under consideration is concerned, may be sustained. Nor is the result affected by the statement in Bentley's bill that the land is encumbered with a lien in favor of Polk, "as he is informed;" for, as we have seen, knowledge of the particular lien would not have prevented him from acquiring the prior right to satisfaction, and mere information could not have a greater effect.

A more difficult question is, whether Polk is not entitled, under our homestead laws, and without reference to the vendor's equitable lien, to subject the homestead right to the satisfaction of his debt by virtue of the fact that it is for the purchase money of the land. It is clear, and is conceded, that Bentley, who is only a general creditor as to the land in controversy, cannot reach the homestead by his attachment bill, filed after the accrual of the homestead right. But it is insisted that Polk, by reason of the character of his debt, stands in a better attitude, the homestead exemption affording no protection to his demand. The argument turns primarily upon the construction of the homestead laws.

The Constitution of 1870 provides as follows: "A homestead in possession of each head of a family, and

the improvements thereon, to the value in all of one thousand dollars, shall be exempt from sale under legal process during the life of such head of a family, to inure to the benefit of the widow, and shall be exempt during the minority of their children occupying the same. This exemption shall not operate against public taxes, nor debts contracted for the purchase money of such homesteads, or improvements thereon." Constitution, art. 11, sec. 11. The statute enacted to carry these constitutional provisions into effect, after providing for the exemption of the homestead from sale "under legal process," adds the following proviso: "And provided, further, that such estate shall not be exempt from sale for the payment of public taxes legally assessed upon it, or from sale for the satisfaction of any debt or liability contracted for its purchase, or legally incurred for improvements thereon." Act of 1870, 2d sess., ch. 80, sec. 1, T. & S. Rev., 2114a. Under these provisions it is obvious that the homestead is not exempt from sale "for the satisfaction of any debt or liability contracted for its purchase." It may be sold by execution issued on a judgment recovered on such a debt, or otherwise subjected by legal process. *Woodlie* v. *Towles*, 1 Memphis L. J., 68, 179; S. C. 1 Leg. Rep., 331. The creditor proceeds, not by virtue of the vendor's lien, which is only enforceable in equity, and may be lost by waiver, but by virtue of the general right of a creditor to subject his debtor's property by "legal process," the homestead exemption not applying to such a debt. Unless, therefore, the facts of this case take the "debt

or liability" out of the proviso of the statute, the right to subject the property covered by the homestead claim to its satisfaction, would seem clear.

The sale in this case to the claimant of the homestead was made by the clerk and master of the chancery court, under the orders of that court, and the notes for the purchase money were made payable to him.   After the purchaser had paid the balance due to the original vendor, the complainant in that suit, and the costs of the cause, there remained a surplus of purchase money, for which he executed the note in controversy.   The master, thereupon, reported that the purchase money had been paid in full, and this report was confirmed without objection, and the title to the land vested absolutely in the purchaser.   Upon these facts it is argued that the debt, evidenced by the note, has lost the character which would entitle it to subject the property, notwithstanding the homestead exemption.   To sustain this view, reliance seems to be placed on the fact that the sale of the land was made by the master, not by Polk—that the note was given on an extension of the time of payment, with personal security, and at a higher rate of interest than the original purchase notes, and that the fact of the payment of the original purchase notes was adjudged by the court, upon the master's report, when the title to the purchaser was made.   The court acquired jurisdiction to order a sale of the land by virtue of the contract entered into between the complainant and defendant to the suit in the original trade.   The court and its officer, the master, were, therefore, the agents

of the vendee, the owner of the land, as much so in reality, though not in form, as if he had executed to them a regular power of attorney to sell and appropriate the proceeds in conformity with the contract. He was entitled to the surplus proceeds of sale after satisfying the debt of his vendor and the costs of suit. If the master, after entering all proper credits on the notes given to him, had, under order of the court, transferred the notes to the defendant Polk, there could not have been a doubt that the unpaid balance would have been a "debt or liability contracted for the purchase" of the land. . If, afterward, the purchaser had taken up the old notes by giving a new note, it would have been a simple renewal, the consideration remaining the same. And if he had secured the last note by personal security or a mortgage, the consideration would not have been altered, and any interest allowed by law would be a mere incident to the extension of the time of payment. What was done in fact, without the circumlocution, was nothing more in substance. The weight of authority is that a change in the form of the original evidence of debt, by a new and even higher security, or by additional security, either personal or real, will not alter the character of the debt, nor affect the vendor's right to satisfaction out of the land sold. *Austin* v. *Underwood*, 37 Ill., 438; *Hawkes* v. *Hawkes*, 46 Ga., 204; Thompson on Homestead, sec. 311, 359. To the same effect are our decisions on the general principle, *Dick* v. *Powell*, 2 Swan, 632; *Mulherrin* v. *Hill*, 5 Heis., 58, and in the particular case of the homestead debt,

Woodie v. Towles, ut supra. The form may be changed, but the debt, with all the equitable rights incident thereto, such as those which attach to the time of its creation, or the consideration for it, remain. Id; Stratton v. Perry, 2 Tenn. Ch., 633. It is the debt which the statute provides for, without regard to the form it may assume, or the additional security given. The recital in the deed of conveyance of land that the purchase money had been paid was never allowed to affect the vendor's equity. 2 Sto. Eq. Ju., sec. 1225. A similar recital in the decree vesting title can have no greater effect. The reason in both instances is, that the object of the recital is merely to give the purchaser an absolute title, not to affect the right to collect the purchase money in any mode allowed by law.

The fact is indisputable that the purchase money represented by the note in controversy has not been paid, and it is this fact which prevents the operation of the homestead exemption. The statute has guarded against the injustice of exempting land from liability for the debt by which it was obtained, an injustice so obvious that the courts of the States, where no statutory provision on the subject exists, have made the exception themselves. Thompson on Homestead, sec. 330. And so the courts of this State have held the vendor's lien superior to the widow's rights to dower, although other creditor's liens must yield. Featherston v. Boaz, 1 Leg. Rep., 224. All the authorities agree that the homestead continues liable as long as any part of the purchase money remains unpaid. Bush v.

*Scott,* 76 Ill., 525; *Harris* v. *Glenn,* 56 Ga., 94. If, in the meantime, all the land conveyed, except the part fixed with the homestead, has been seized by other creditors, it can make no difference. It is precisely as if the purchaser had himself sold the land, leaving only the homestead.

The Chancellor ordered the land to be sold free from the equity of redemption, but required the purchaser to pay $1,000 in cash for the homestead. It is, perhaps, not necessary to determine whether the order is entirely consistent with the law authorizing a sale free from redemption. Code, sec. 2124. The title of the purchaser and the sale cannot be affected by a reversal of the decree. Code, sec. 3186; *Livingston* v. *Noe,* 1 Lea, 66. But the statute which requires the land to be sold, where the homestead cannot be set apart, manifestly contemplates a sale for cash. Code, sec. 2117a. The object is to provide the family with a new home as soon as they are compelled to give up the old one. No reason occurs, or has been suggested, why the homestead interest or estate might not be sold for cash without infringing upon the spirit or letter of the redemption law, for the sale is, to that extent, of the debtor's property for his own benefit. In this case the debtor had acquired a homestead right, but that right is, by the terms of the statute, not exempt from liability by legal process for the unpaid purchase money.

The bill of R. J. Polk purports to be filed for the use of L. E. Polk, without stating whether the latter had any and what interest in the debt. No objection

was taken in the court below by answer or otherwise to this unusual form of chancery pleading. It is obviously too late to make any point upon it in this court.

The decree below will be reversed so far as it directs that the proceeds of the homestead be paid to Jordan and wife, and a decree will be rendered here subjecting the fund, so far as it may be necessary, to the Polk debt, the costs of this court being first paid out of the fund.

Any surplus would belong to Jordan and wife, to be reinvested in a homestead, and may be so applied.