BREARLEY SCHOOL, Limited, v. WARD.

(Supreme Court, Appellate Division, First Department. June 10, 1910.)

1. CONSTITUTIONAL LAW (§ 99*)—IMPAIRMENT OF VESTED RIGHTS.

The amendment of Code Civ. Proc. § 1391, by Laws 1908, c. 148, allowing levy of execution on an income derived from a trust fund, though the judgment was not recovered for necessaries or for work performed as a domestic, etc., has reference to a change in Code Civ. Proc. §§ 1389–1404a, governing exemptions from execution, and does not impair the value of a vested estate or deprive any one of a vested property right; an exemption from execution being a gratuity and not a vested right.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 204; Dec. Dig. § 99.*]

2. CONSTITUTIONAL LAW (§ 120*)—OBLIGATION OF CONTRACTS—EXEMPTION STATUTE AS CONTRACT.

A statute of exemption from execution is not a contract between the state and the judgment debtor.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 292, 302; Dec. Dig. § 120.*]

Ingraham, P. J., and McLaughlin, J., dissenting.

Appeal from Appellate Term.

Action by the Brearley School, Limited, against Beverly Ward. An order of the City Court of New York, denying a motion for an order under Code Civ. Proc. § 1391, was affirmed by the Appellate Term (121 N. Y. Supp. 691), and plaintiff appeals. Reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, CLARKE, and DOWLING, JJ.

Grenville Clark, for appellant.

William G. Chittick (Louis W. Dinkelspiel, on the brief), for respondent.

DOWLING, J. Plaintiff obtained a judgment against the defendant in the City Court of the city of New York on September 17, 1909, for the sum of $727.63, which was duly docketed and the execution issued thereupon was returned unsatisfied. Having ascertained that defendant was in receipt of an income from a trust estate created under the last will and testament of Montagnie Ward, deceased (admitted to probate September 6, 1879), plaintiff applied to the City Court on December 7, 1909, for an order for a special execution against said income pursuant to the provisions of section 1391, Code Civ. Proc. It is not questioned that the application complied in all respects with the requirements of the section. It was denied upon the ground that the amendment of the section which went into effect on September 1, 1908 (Laws 1908, c. 148) and by which a special execution against

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

trust income as well as against wages, debts, earnings, and salary, was authorized where a judgment for any cause had been recovered (thus extending the prior authority for such an execution only in the case of a judgment for necessaries), did not apply to trusts created before the passage of the act. The Appellate Term (121 N. Y. Supp. 691) held that the legislation was retroactive, and that, as the section must be so construed and held to be applicable to income from trusts created prior to its enactment, it was unconstitutional. From this determination the present appeal is taken.

At the outset it may be said that the amendment of section 1391 does not impair the value of a vested estate, nor deprive any one of a vested right in property. It has reference to a change in the provi-. sions of law governing exemptions of property from levy and sale by virtue of an execution, which are found in title 2, art. 1, Code Civ. Proc. §§ 1389–1404a, inclusive. It is well settled that a statute of exemption from levy under an execution is not a contract between the state and the judgment debtor. Such an exemption is a gratuity, not a vested right, and it may be changed as circumstances may dictate. Myers v. Moran, 113 App. Div. 427, 99 N. Y. Supp. 269. "Of course, it could not be said that if a man purchased a farm, and at the time it was exempt from execution by levy by creditors, the Legislature would have no right thereafter to remove or alter that exemption." Kittel v. Domeyer, 70 App. Div. 139, 75 N. Y. Supp. 153. As was said in the case of Harris v. Glenn, 56 Ga. 94:

"Debtors have no vested right not to pay their debts. What they have and what they acquire the state may subject to legal process for the satisfaction of creditors. If the state will furnish the process and allow it to run, nothing the debtors own is beyond its reach. * * * Exemption of property from levy and sale for the payment of debts is but a privilege for the time being—mere grace and very dependent upon the will of the state. An exemption which exists by statute may be reduced or withdrawn by statute."

"Statutory exemption of a debtor's property from levy and sale for the payment of his debts is a mere privilege for the time being, dependent upon the will of the state, and not a vested right, and, in the absence of constitutional restrictions, the Legislature may modify or wholly repeal exemption laws, even as to existing property and debts. Modification or repeal of an exemption does not impair the obligation of any contract as to creditors, but, on the contrary, it enlarges their remedy. And it is not objectionable as impairing the obligation of contracts as regards the debtor, for there is no contract giving him an exemption." 12 Am. & Eng. Ency. of Law (2d Ed.) 74.

The exemption from having his income from the trust estate reached by execution which the defendant has heretofore enjoyed is a favor granted by the state, for which neither he nor the testator gave any consideration, and which may be limited or removed by the state as freely as it was originally created.

The distinction seems clear between transfer tax cases, where by subsequent legislation it was sought to tax estates and rights which had theretofore vested, as in Matter of Pell, 171 N. Y. 48, 63 N. E. 789, 57 L. R. A. 540, 89 Am. St. Rep. 791, and the case at bar. In the former instance a part of the property was taken directly from the person taxed and applied to a public and general use. In the latter no part of the income sought to be reached by execution is divested to a general use, but the debtor is compelled to use a portion of his

funds in installments to satisfy a just debt which he has contracted, and which he would be compelled to pay at once in full, were it not that the state has given him as to that fund an immunity from the seizure under execution which it deems wise to limit and retrench. There never was any contract between the debtor and the state that the original immunity from levy would be preserved, as there never was any contract between the testator and the state that existing laws at the time of his ·decease should remain unchanged so far as affected the interests of those for whom he created a trust. The legislation by which the exemption of wages and trust income from levy under an execution was first abridged to the extent of 10 per cent. when a judgment for necessaries had been recovered, and then similarly abridged in the case of any judgment, was purely remedial in its nature. As was said in Laird v. Carton, 196 N. Y. 174, 89 N. E. 823, in reference to this very section:

"The amendment to section 1391 like the whole section as it stood before the amendment relates to proceedings in a lawsuit—i. e., the execution or final process—hence it is a statute dealing with a legal remedy. It applies to all cases which have reached the intermediate stage between judgment and execution. As has been pointed out, the phraseology of the amendment does not require us to construe it as applicable only to future judgments. It matters not that when the judgment was recovered an execution could not issue thereon against wages, earnings, or salary; it is enough that such an execution has subsequently been authorized. The statutory authorization for its issuance does not impair the obligation of any contract or affect any vested right. It merely furnishes the judgment creditor with a broader and more effective remedy than the law gave him before. To this there is no constitutional objections. Such an application of the statutes is not so much retroactive as active upon an existing condition of things, to wit, existing judgments which are yet to be enforced by execution."

See, also, Myers v. Moran, 113 App. Div. 427, 99 N. Y. Supp. 269; Morse v. Goold, 11 N. Y. 281, 62 Am. Dec. 103.

It follows, therefore, that the order of the City Court and the determination of the Appellate Term must be reversed, with costs to appellant in all the courts, and the application for leave to issue a special execution granted, with $10 costs.

CLARKE and SCOTT, JJ., concur.

McLAUGHLIN, J. (dissenting). On the 30th of June, 1879, Montagnie Ward died, leaving a last will and testament which was admitted to probate on the 6th of September of that year. He left him surviving four children, of whom the respondent is one. By the will the testator gave all his property to his executors and trustees in trust to convert into money, and then, after setting apart certain sums, directed that the residue be divided into as many shares as he should have children him surviving, one share to be separately invested for each child and the income derived therefrom paid to such child during the term of his natural life, and, after his death, the principal to be paid to his lawful issue, or, in default of such issue, to his heirs at law. The executors and trustees, following the direction contained in the will, set apart and invested a certain sum for the respondent, and since that time the income therefrom has been paid to

him. On the 17th of September, 1909, the appellant recovered a judgment against the respondent in the City Court of the city of New York for the sum of $727.63, and execution was issued thereon to the sheriff of the county of New York, and by him returned wholly unsatisfied. Thereafter the appellant applied, under section 1391 of the Code of Civil Procedure, for an order that an execution issue "against the income from the trust fund now due or hereafter to become due," and directing the trustees to pay on account of the execution 10 per cent. thereof. The motion was denied, and an appeal taken to the Appellate Term, where the same was affirmed, and from its determination an appeal was taken to this court.

The section of the Code referred to (section 1391) provides that, under certain conditions, an execution may be issued to the extent of 10 per cent. against the "wages, debts, earnings, salary" and "income from trust funds" due and owing to the judgment debtor, or thereafter to become due and owing to him, provided the same amount to $12 or more per week, and that such execution, when issued, becomes a lien and continuing levy until it and the expense thereof are fully paid. This section in its amended form took effect on the 1st of September, 1908 (chapter 148, Laws 1908), and it is settled that an execution may issue against "wages," although the judgment upon which the execution is issued was rendered before the enactment of such amendment. Laird v. Carton, 196 N. Y. 169, 89 N. E. 822. This court has determined in at least three cases that a judgment creditor cannot obtain an execution and levy upon the income derived from a trust estate created prior to the time the amendment became a law (Demuth v. Kemp, 130 App. Div. 546, 115 N. Y. Supp. 28; King v. Irving, 103 App. Div. 420, 92 N. Y. Supp. 1094; Sloane v. Tiffany, 103 App. Div. 540, 93 N. Y. Supp. 149), and the same view has been taken by the Second Department (Ringe v. Mortimer, 116 App. Div. 722, 101 N. Y. Supp. 1110). The reason assigned, as appears from the opinions in some of the cases, why such levy could not be made, was that the statute did not have a retroactive effect, and, if so, it was unconstitutional. While the Court of Appeals held, in the Laird Case, that the view of this court as to the retroactive effect of the amendment was erroneous, it in no way passed upon the other question, viz., as to whether the statute would be constitutional if it applied to the income from a trust fund created prior to the time it took effect. It seems to me, therefore, that the orderly method of procedure, as well as respect for our own decisions, requires the affirmance of the order appealed from, but, inasmuch as a majority of the court think otherwise, I desire to briefly state why in my opinion this statute, if it be held to apply to the income derived from a trust fund created prior to its enactment, is not a valid exercise of legislative power.

The income here sought to be reached is derived from a trust fund. The trust was created and the fund set apart in 1879. It was a trust which the statute authorized to be created, hence was then a legal one, and has since so remained. When Mr. Montagnie Ward made his will, the state, in effect, said to him, speaking through the statute:

"If you will give a portion of your property to A. in trust, and he will agree to invest the same and pay the income derived therefrom to your son,

the statute under which you are permitted to thus give it will be sufficient to compel A. to keep his agreement."

Mr. Montagnie Ward having given the property, and the trustees having accepted it, the Legislature could not thereafter destroy the trust in whole or in part, because to do so would violate that provision of the federal Constitution which prohibits the state from impairing the validity of a contract. Humphrey v. Pegues, 16 Wall. 244, 21 L. Ed. 326. While the arrangement under which the property was given by the testator and received by the trustees may not in a strict or technical sense have amounted to a contract, nevertheless it was so in spirit. It is fairly to be inferred that Mr. Montagnie Ward would not have given his property to the trustees except upon the implied understanding that they would voluntarily carry out his wishes, and, if not, they would be compelled to do so by the laws of the state. But if the statute in question be valid, then this contract, agreement, or understanding—whatever it may be called—may be entirely destroyed by the fiat of the Legislature. If it can compel the trustees to pay 10 per cent. of the income to the sheriff, it can compel the payment of 100 per cent. to him or any other person. This I do not believe it has the power to do.

In People ex rel. Cooper Union v. Wells, 180 N. Y. 537, 72 N. E. 1147, it was held that certain property of Cooper Union was not subject to taxation because the act under which it was incorporated contained a provision to that effect; that Peter Cooper, in pursuance of that provision, had conveyed certain property to the corporation and by his will provided for its endowment; and that, after his death, the trustees under his will executed his purpose by transferring property in endowment thereof. The basis of this decision as stated by the Court of Appeals in People ex rel. Roosevelt Hospital v. Raymond, 194 N. Y. 198, 87 N. E. 90, was, as declared by Justice Bischoff at Special Term, that the exemption was not a spontaneous concession, but was a direct condition to attach to the gift.

Again, if the act in question be given the effect contended for in the prevailing opinion, it is unconstitutional, because it deprives one of his property without due process of law. Section 6, art. 1, Const. N. Y. The title to the trust fund set apart for the defendant and the income derived therefrom, until paid to him, are lodged in the trustees. It is true they hold the trust funds and the income derived therefrom until paid to him for a specific purpose. That was the condition of the gift. Their right to act as trustees at all depends upon their performing those conditions with fidelity. They have no right to pay the income to any person other than to the one whom the testator designated. If they can be directed to pay 10 per cent. of the income to the sheriff, then it necessarily follows that the Legislature could direct it all should be paid to him. The effect of such a statute would be to deprive one of property without due process of law. Muhlker v. Harlem R. R. Co., 197 U. S. 544, 25 Sup. Ct. 522, 49 L. Ed. 872; Livingston v. Livingston, 74 App. Div. 261, 77 N. Y. Supp. 476, affirmed 173 N. Y. 377, 66 N. E. 123, 61 L. R. A. 800, 93 Am. St. Rep. 600. In the Muhlker Case it was held that, after the court of last resort in a state had determined that a certain thing was property,

the owner could not be deprived of it without compensation. In the Livingston Case it was held that chapter 742 of the Laws of 1900, which amended section 1759 of the Code of Civil Procedure by authorizing the court at any time after the entry of a final judgment of divorce in favor of a wife to annul, vary, or modify the provisions of the judgment with respect to the payment of alimony, was unconstitutional, in so far as it applied to a judgment entered prior to the time the amendment took effect.

The act in question is unconstitutional because it deprives the defendant of a beneficial interest in property without due process of law. As soon as the trust estate was created, the defendant became entitled to the income derived therefrom. This was a fixed, settled, and vested interest, a property right which the Legislature could not take from him and of which he could be deprived only by due process of law. The right to the payment of alimony under a judgment recovered prior to the passage of a statute is no greater or more secure than the right to the payment of income derived from a trust fund. If the right is vested in one case, it must also be vested in the other, and if one is beyond legislative attack, then it seems to me the other is. To hold that the statute applies to trusts created prior to September 1, 1908, is to diminish the income to the extent of 10 per cent., which the testator intended for his son, and, if this can be legally done, then the Legislature has the power, as we have already seen, to deprive the son of the whole sum. Metcalfe v. Union Trust Co., 181 N. Y. 39, 73 N. E. 498. At the time the trust in question was created the Revised Statutes permitted, to a certain extent, income from trust funds to be reached by creditors (Williams v. Thorn, 70 N. Y. 270; Tolles v. Wood, 99 N. Y. 616, 1 N. E. 251), and to this provision the trust, as created by the testator, was at all times subject. The income cannot be reached in any other way until it has actually been paid to the defendant. The case of Kittel v. Domeyer, 175 N. Y. 205, 67 N. E. 433, is not in point, nor does the principle there laid down have any application to the question here presented.

The order appealed from therefore should be affirmed.

INGRAHAM, P. J., concurs with McLAUGHLIN, J.