In the Matter of the Transfer Tax upon the Estate of WALDEN PELL, 1ST, Deceased.

LESLIE PELL-CLARKE, as Administrator with the Will Annexed, Appellant; THE COMPTROLLER OF THE CITY OF NEW YORK, Respondent.

TAX — CHAPTER 76, LAWS OF 1899, IMPOSING TRANSFER TAX UPON REMAINDERS OR REVERSIONS VESTING PRIOR TO JUNE 30, 1885, UNCONSTITUTIONAL. Chapter 76 of the Laws of 1899, providing for a tax upon remainders and reversions which had vested prior to June 30, 1885, upon their coming into actual possession or enjoyment is, upon its face, an amendment of the Tax Law relating to taxable transfers of property (L. 1896, ch. 908, § 230) and imposes a tax upon the right of succession to property; it is not an exercise of legislative power imposing a direct tax thereon and is unconstitutional and void because it diminishes the value of vested estates, impairs the obligation of a contract and takes private property for public use without compensation; if, however, it could be regarded as imposing a direct tax upon property, the same result would follow for the reason that it discriminates against a limited class of remaindermen and apportions the burden unequally among the owners of estates sought to be taxed.

*Matter of Pell*, 60 App. Div. 286, reversed.

.(Argued March 24, 1902; decided May 6, 1902.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered April 29, 1901, which affirmed an order of the New York County Surrogate's Court denying a motion for an order declaring the estate of Walden Pell, 1st, deceased, exempt from taxation under the Transfer Tax Act.

The facts, so far as material, are stated in the opinion.

*E. Ellery Anderson, William Temple Emmet* and *P. Chauncey Anderson* for appellant. The provisions of the Transfer Tax Law cannot apply when there is no transfer of property whatever. (*Matter of Hoffman,* 143 N. Y. 330; *Matter of Bronson,* 150 N. Y. 6; *Matter of Harbeck,* 161 N. Y. 218; *Knowlton* v. *Moore,* 178 U. S. 41.) The beneficiaries under the will of Walden Pell took vested interests at the time of his death in 1863. At the death of his widow, in December, 1899, there was no transfer then taking effect from Walden Pell to such beneficiaries. (*Matter of Seaman,* 147 N. Y. 69.) If the amendment of 1899 be considered as imposing a succession or transfer tax upon the estate which vested April 14, 1863, it is retroactive and affects rights which had vested before its passage. It is, therefore, in violation of the section of the Constitution of the United States which forbids the passage of any law impairing the obligations of contracts, and also in violation of the provision of the Constitution of the State of New York which prohibits the taking of private property for public use without compensation. (*G. S. Bank* v. *S. Bridge,* 159 N. Y. 362; *Benson* v. *New York,* 10 Barb. 223; *People* v. *Westchester County,* 4 Barb. 64; *Dash* v. *Van Kleeck,* 7 Johns. 477; *Westervelt* v. *Gregg,* 12 N. Y. 202; *Sayre* v. *Wisner,* 8 Wend. 661; *N. Y. R. Co.* v. *Van Horn,* 57 N. Y. 473; *Berley* v. *Rampacher,* 5 Duer, 183; *Calkins* v. *Calkins,* 3 Barb. 305; *Danks* v. *Quackenbush,* 3 Den. 594; *Quackenbush* v. *Danks,* 1 Den. 128; *Wood* v. *Oakley,* 11 Paige, 400.) If the amendment under consideration be considered as imposing a direct tax upon the property of the persons designated by the act, it cannot be sustained, because it is not uniformly imposed upon any class of property or class of persons. The legislature has no power to discrimate between owners of the same class of property and to subject some designated owners to the payment of a high rate of taxation, while permitting other owners of the same class of property to pay at a lesser rate, and other owners to escape taxation entirely. (Cooley on Taxn. 241; *Lexington* v. *McQuillan,* 9 Dana,

4

513; *Pollock* v. *F. L. & T. Co.*, 157 U. S. 599; *Matter of McPherson*, 104 N. Y. 306; *San Bernardo Co.* v. *S. P. R. R. Co.*, 112 U. S. 422; *County of San Mateo* v. *S. P. R. R. Co.*, 13 Fed. Rep. 722, 737, 744; *County of Santa Clara* v. *S. P. R. R. Co.*, 18 Fed. Rep. 385; *N. P. R. R. Co.* v. *Walker*, 47 Fed. Rep. 681; *Frazer* v. *McConney Co.*, 82 Fed. Rep. 257.) The amendment of section 230 of the Taxable Transfer Law, passed March 14, 1899, if considered as a tax upon property must be declared invalid for the reasons: That it does not subject to the tax a class of property, but does subject certain designated persons defined by the character of their ownership to the payment of the tax; and that it does not apportion the burden equally upon all the owners designated, but discriminates between different owners, so that the share of the burden imposed as to some owners is five per cent, as to other owners is one per cent, and as to other owners is nothing at all. (*Matter of Henneberger*, 155 N. Y. 420.) The provision contained in Walden Pell's will, giving to his wife the power by her last will to exclude any one, but not more than one of the testator's devisees or legatees from participation in the benefits of the devises contained in his will, in no manner affects the character or quality of the estates given by will. (*Matter of Langdon*, 153 N. Y. 6; *Matter of Seaman*, 147 N. Y. 69; *Matter of Harbeck*, 161 N. Y. 211.)

*Jabish Holmes, Jr.*, and *Edward H. Fallows* for respondent. The bequests of money and estates in remainder are clearly taxable under the provisions of section 230 of the Taxable Transfer Law, as amended by chapter 76 of the Laws of 1899. (*Matter of Seaman*, 147 N. Y. 69; *Campbell* v. *Stokes*, 142 N. Y. 23; *Matter of Hoffman*, 143 N. Y. 327; *Matter of Roosevelt*, 143 N. Y. 120; *Matter of Curtis*, 142 N. Y. 219; *Carpenter* v. *Penn*, 17 How. [U. S.] 456; *Orr* v. *Gilman*, 183 U. S. 278; *Gelsthorpe* v. *Furnell*, 20 Mont. 310; *Matter of Oyon*, 6 Rob. [La.] 504; *Matter of Deyrand*, 9 Rob. [La.] 357.) The power of taxation possessed by the state

extends to all species of property within the state, and its exercise does not deprive a person of property without due process of law. (Cooley on Taxn. 3; *People* v. *Mayor, etc.*, 4 N. Y. 423; *People* v. *E. T. Co.*, 96 N. Y. 395; *Matter of McPherson*, 104 N. Y. 306; *Matter of Dows*, 167 N. Y. 232; *Matter of Sherill*, 125 N. Y. 376; *Magoun* v. *I. T. & S. Bank*, 170 U. S. 283; *Giozza* v. *Tiernan*, 148 U. S. 657.) The amendment of 1899, even if retroactive, is not unconstitutional, because the right to inherit or receive these future expectant estates, although created in 1863, was a continuing right, and, like any other civil right created by the state, can be taxed at any time during its continuance, and before the right is exhausted by the actual receipt of the property. (*People* v. *Mayor, etc.*, 4 N. Y. 424; *Astor* v. *Mayor*, 62 N. Y. 591; *Town of Guilford* v. *Supervisors*, 13 N. Y. 149; *People* v. *Lawrence*, 41 N. Y. 141; *Hersee* v. *Porter*, 100 N. Y. 411; *Matter of Seaman*, 147 N. Y. 69; *Carpenter* v. *Pennsylvania*, 17 How. Pr. 456; *Matter of Vanderbilt*, 50 App. Div. 246; 163 N. Y. 597; *Orr* v. *Gilman*, 183 U. S. 278; *Matter of Dows*, 167 N. Y. 227.) The order should be affirmed. (*Woodward* v. *James*, 115 N. Y. 346; *L. S. & M. S. R. R. Co.* v. *Ohio*, 178 U. S. 308.)

BARTLETT, J. The testator, Walden Pell, 1st, died in the city of New York on the fourteenth day of April, 1863, and by the terms of his will he gave a life estate in all his property to his widow, with remainders over at her death in equal shares (after making various bequests of personal property) to his nephews and nieces and the issue of any deceased nephew or niece, together with one equal share thereof to his sister Emma. The life tenant, the widow, died on the twentieth day of December, 1899, at which time all the estates in remainder came into the actual possession and enjoyment of the beneficiaries under the will and codicil.

It is not disputed that under this will the bequests of personal property and the estates upon remainder of real estate vested in the beneficiaries at the time of the testator's death.

Notwithstanding the vesting of these estates in the year 1863, it is contended on behalf of the comptroller of the city of New York that they are subject to the payment of the transfer tax, under an amendment of the general statute, providing for taxable transfers (Laws 1899, ch. 76), being article ten of an act in relation to taxation, constituting chapter twenty-four of the general laws (Chap. 908 of the Laws of 1896, pp. 795, 868), which reads as follows :

" All estates upon remainder or reversion, which vested prior to June thirtieth, 1885, but which will not come into actual possession or enjoyment of the person or corporation beneficially interested therein until after the passage of this act shall be appraised and taxed as soon as the person or corporation beneficially interested therein shall be entitled to the actual possession or enjoyment thereof."

This amendment of 1899 became a law on March 14th of that year, the life tenant dying in the following December.

It is conceded that the remainders in this case are controlled by this amendment if it can be sustained as a valid exercise of legislative power.

The appellant insists that this amendment imposing a succession or transfer tax upon estates which vested April 14th, 1863, is retroactive and attempts to tax estates and rights which had vested long before its enactment; that this being so, it violates the Constitution of the United States, which forbids any law impairing the obligations of contracts, and also the Constitution of the State of New York which prohibits the taking of private property for public use without compensation.

The appellant does not attack the constitutionality of the law simply because it is retroactive, but for the reason that it is both retroactive and effective to impair vested rights.

The language of this amendment of 1899 would seem to include all remainders created by deed or will which come within the restrictive time limitation therein fixed.

Legislation which impairs the value of a vested estate is unconstitutional. (*Germania Savings Bank* v. *Vil. of Sus-*

*pension Bridge*, 159 N. Y. 362.) In this case the legislature sought to confer the right of appeal after the expiration of the statutory limitation. In so far as this statute applied to existing judgments it was held unconstitutional but valid as to judgments thereafter recovered. (*Dash* v. *Van Kleeck*, 7 Johns. 477; *Sayre* v. *Wisner*, 8 Wend. 661; *Danks* v. *Quackenbush*, 3 Denio, 594; *Wood* v. *Oakley*, 11 Paige, 400; *Westervelt* v. *Gregg*, 12 N. Y. 202; *N. Y. & O. M. R. R. Co.* v. *Van Horn*, 57 N. Y. 473.)

This court in *Matter of Seaman* (147 N. Y. 69) held that the Taxable Transfer Act of 1892, which provided that "such tax shall also be imposed when any person or corporation becomes beneficially entitled, in possession or expectancy, to any property or the income thereof by any such transfer, whether made before or after the passage of this act," was to be restricted to the case of grants or gifts *causa mortis*, mentioned in the preceding portion of the subdivision, and did not extend to transfers by will or intestacy so as to subject to taxation rights of succession which accrued before the statute came into existence.

Judge Finch said: "We have held that the tax is not upon the property which is transferred, but upon the right of succession which passes to the successor. (*Matter of Swift*, 137 N. Y. 88.) A right of succession passed to the four living children of George at the death of testator. It came from him; it was transferred by him; taking effect at his death; and passed then or never. But the right itself, although vesting in the successors at once, had its own peculiar character. It could not ripen into possession or enjoyment until the death of the life tenants, and before that event was contingent solely as to the person who should eventually take and the proportions to be observed. The legatees as a class were certain; the particular individuals were alone uncertain. * * * To say that no beneficial interest passed into the hands where it was taxable is very different from saying that no beneficial interest passed at all. The doctrine of the case (*Matter of Curtis*, 142 N. Y. 219) and its manifest trend was

that where the particular persons who were to have the bene-
ficial possession were uncertain, the appraisal and collection
must be adjourned until the uncertainty ended, but no new
doctrine of the passing of the right of succession at a date
later than that of the will was at all asserted.   It is said, how-
ever, that the right of succession passing in remainder by the
will was at best merely technical and nominal, and that the
beneficial interest did not pass until the termination of the
life estates.   In one sense that is true.   The right of succes-
sion to specific individuals might prove barren, and for that
reason the claim of the state should be adjourned, and the law
of 1892 fully recognizes and provides for such an adjourn-
ment, but a necessary and admissible delay in appraisal and
collection is a very different matter from an assertion that no
beneficial right of succession passed at all until after the
decease of the life tenants."

Under the original statute of 1885 it was the practice in
some of the Surrogates' Courts of the state to assess the trans-
fer tax on vested remainders not yet in possession and in
regard to which there was a contingency as to the members of
a class who would take.   This was obviously unjust, and this
court determined that the assessment and collection of the tax
should be postponed until the persons were known who should
ultimately come into possession.   (*Matter of Roosevelt*, 143
N. Y. 120 ; *Matter of Hoffman*, 143 N. Y. 327.)

The rule thus laid down was clearly just, as otherwise a
remainderman named in a will might be called upon to pay a
succession tax upon property which he might never enjoy.

The legislation of 1899, now under consideration, obviously
proceeds upon a misapprehension of the effect of the absolute
vesting of a remainder.   Expectant future estates, as defined
in the statute, expressly include all remainders, whether vested
or contingent, and they are by statute descendible, devisable
and alienable.   (*Moore* v. *Littel*, 41 N. Y. 66, 84.)

Mr. Fearne, in his work on Contingent Remainders
(p. 364), says : " In general, it seems, that contingent inter-
ests pass to the real and personal representatives, according

to the nature of such interests, as well as vested interests,
so as to entitle such personal representatives to them when
the contingencies happen." (*Kenyon* v. *See*, 94 N. Y. 563,
568.)

This court and the Supreme Court of the United States
have held in numerous cases that the transfer tax is not
imposed upon property, but upon the right of succession. It,
therefore, follows that where there was a complete vesting of
a residuary estate before the enactment of the transfer tax
statute, it cannot be reached by that form of taxation. In
the case before us it is an undisputed fact that these remain-
ders had vested in 1863, and the only contingency leading
to their divesting was the death of a remainderman in the
lifetime of the life tenant, in which event the children of the
one so dying would be substituted. If these estates in remain-
der were vested prior to the enactment of the Transfer Tax
Act there could be in no legal sense a transfer of the prop-
erty at the time of possession and enjoyment. This being so,
to impose a tax based on the succession would be to diminish
the value of these vested estates, to impair the obligation of a
contract and take private property for public use without
compensation.

The learned Appellate Division reached the conclusion that
this amendment of 1899 was unconstitutional, and we agree
with them in that regard. They have, however, sustained
this legislation on the ground that it is a direct tax upon
property and a legitimate exercise of the taxing power. In
so holding that learned court uses this language: "It may
seem incongruous that a transfer tax act, which in principle
was intended to impose a tax upon the right of succession,
should be construed in such a way as to uphold the tax as one
upon property. Our conclusion, therefore, upon the whole
case is, that if the tax sought to be imposed could only be
supported upon the principle that it is a tax upon the right
of succession, then there would be objections, among them
constitutional ones, to its validity; but that with reference to
the estate here involved, if the act can be construed, as with

some misgivings we think it can, as a tax upon property, it is free from constitutional objections, and the tax may be upheld."

We are of opinion that it is a violent presumption as to the intention of the legislature to construe an act, which is avowedly designed to tax the succession of property, on the death of its owner, as a direct tax.

It would seem to be too clear for argument that the legislative intention in this regard was to deal with the act relating to taxable transfers and with nothing else.

In the first place we have the title of chapter 76 of the Laws of 1899, enacting this amendment, as follows: " An act to amend chapter 908 of the Laws of 1896, entitled ' An act in relation to taxation, constituting chapter 24 of the General Laws,' as amended by chapter 284 of the Laws of 1897, *relating to taxable transfers of property.*"

The first section thereof opens with these words: " Section 230 of chapter 908 of the Laws of 1896,   *   *   *   *relating to taxable . transfers of property,* is hereby amended to read as follows," etc.

To say that the act was not an amendment of the law relating to taxable transfers of property is to contradict what plainly appears upon its face.

We will once more quote the amendment : " All estates upon remainder or reversion, which vested prior to June 30th, 1885, but which will not come into actual possession or enjoyment of the person or corporation beneficially interested therein until after the passage of this act, shall be appraised and taxed as soon as the person or corporation beneficially interested therein shall be entitled to the actual possession or enjoyment thereof."

The intention of the legislature being so absolutely clear in the premises, for it must be remembered that ever since the death of the testator this property has borne and discharged its annual taxes just the same as other property, we might well be justified in declining to further consider the question of whether this is an effort to impose a direct tax upon property.

Assuming, however, that the legislature intended to exercise its power of direct taxation, the learned counsel for the appellant insists that it is invalid for two reasons:

(1) The law does not subject to the tax a class of property, but does subject certain designated persons, defined by the character of their ownership, to the payment of the tax.

(2) The law does not apportion the burden equally upon all the owners designated, but discriminates between different owners, so that the share of the burden imposed as to some owners is five per cent, as to other owners it is one per cent, and as to still other owners it is nothing at all.

It is the undoubted rule that the legislature possesses unlimited power of taxation except as restrained by constitutional provisions. These restraints require the taxation to be imposed according to well-settled general rules.

In *Pollock* v. *Farmers' Loan & Trust Co.* (157 U. S. 599) the Supreme Court of the United States lays down the following rule: "The inherent and fundamental nature and character of a tax is that of contribution to the support of the government, levied upon the principle of equal and uniform apportionment among the persons taxed, and any other exaction does not come within the legal definition of a tax."

Mr. Cooley in his work on Taxation (at page 596) says : " It is difficult to conceive of a justifiable exemption law which should select single individuals or corporations, or single articles of property, and taking them out of the class to which they belong, make them the subject of capricious legislative favor. Such favoritism could make no pretense to equality ; it would lack the semblance of legitimate tax legislation."

The Supreme Court of the United States in a recent case, decided March 10th, 1902 (*Connolly and Dee* v. *Union Sewer Pipe Company*), have considered the subject of classification very fully. The court says: " The difficulty is not met by saying that, generally speaking, the state when enacting laws may, in its discretion, make a classification of persons, firms, corporations and associations, in order to subserve public objects. For this court has held that classification ' must

always rest upon some difference which bears a reasonable
and just relation to the act in respect to which the classifica-
tion is proposed, and can never be made arbitrarily, and with-
out any such basis.   *   *   *   But arbitrary selection can
never be justified by calling it classification.   The equal pro-
tection demanded by the Fourteenth Amendment forbids
this.   *   *   *   No duty rests more imperatively upon the
courts than the enforcement of those constitutional provisions
intended to secure that equality of rights which is the foun-
dation of free government.   It is apparent that the mere fact
of classification is not sufficient to relieve a statute from the
reach of the equality clause of the Fourteenth Amendment, and
that in all cases it must appear not only that a classification
has been made, but also that it is one based upon some reason-
able ground — some difference which bears a just and proper
relation to the attempted classification — and is not a mere
arbitrary selection.'   .(*Gulf, Colorado and Santa Fe Railway
Co.* v. *Ellis*, 165 U. S. 150, 155, 159, 160, 165.)   These princi-
ples were recognized and applied in *Cotting* v. *Kansas City
Stock Yards Co.* (183 U. S. 79), in which it was unani-
mously agreed that a statute of Kansas regulating the charges
of a particular stock yards company in the state, but which
exempted certain stock yards from its operation, was repug-
nant to the Fourteenth Amendment, in that it denied to that
company the equal protection of the laws."

The case from which we have quoted above involved the
validity of the Illinois trust statute of 1893, which was
alleged to be in violation of the fourteenth amendment of the
Constitution of the United States.   The act was held uncon-
stitutional for the reason that the first section thereof embraced
all persons, firms, corporations or association of persons who
combine their capital, skill or acts for any of the purposes
specified, while the ninth section declares that the statute
shall not apply to agriculturists or live stock dealers in respect
of their products or stock on hand.   This discrimination was
held to render the statute invalid.

It is to be observed that the amendment of 1899, now under

consideration, was further amended in 1900 and 1901 by
changing the words, "June 30th, 1885," to "May 1st, 1892."
While these changes do not affect the case at bar, still they
indicate the legislative intention to narrow the application of
this statute to a very limited number of individuals belonging
to a larger class.  The vice of this legislation is that it does
not seek to impose a tax on all estates upon remainder,
whether created by will or deed, that vested prior to June
30th, 1885, but contains the further provision that the life
estate must expire after the passage of the amendment on
March 14th, 1899.

All the vested estates upon remainder or reversion, as to
which the intermediate life estate terminated between June
30th, 1885, and March 14th, 1899, escape taxation, as they
are not within the purview of the amendment of the latter
year.  The tax is, therefore, imposed upon a limited class of
remaindermen, while others who have come into possession
and enjoyment, by reason of the termination of the life estate
long after the early date fixed of June 30th, 1885, are not
taxed.

The learned counsel for the appellant states a very apt illus-
tration in his brief, as follows : "We often hear it declared
that the legislature may designate watches and carriages as a
class of property and subject the same to the payment of
duties or taxes, but would any one claim that a law, declaring
that all watches or carriages which were purchased prior to
June 30th, 1885, should be appraised and taxed, could be
sustained upon the ground that such law merely designated a
class of property for taxation?"

Where the statute declares that the owners of a particular
class of property, acquired at a particular time, shall be taxed,
it is equivalent to naming the owners of such property; it is
in no sense a general classification.

The principle involved in this mode of taxation is illustrated
in *Matter of Henneberger* (155 N. Y. 420), which involved
the question whether a statute was a general or a private or
local bill.  The head note reads as follows : "Although an

act is drawn in general terms, if its provisions are such in number and in character as unduly, with reference to the constitutional purpose, to restrict its operation, and, to all intents, to confine it to a particular locality, it comes as much under condemnation as a local bill as though it designated the locality by name."

This amendment is clearly unconstitutional in another aspect, as it does not apportion the burden equally among the owners of estates sought to be taxed, for it imposes on some five per cent, on others one per cent, and as to other owners nothing at all. It is true this discrimination was brought about because the legislature was dealing with a succession tax, and, consequently, maintained the differing rates of taxation found in the act in relation to taxable transfers. This is still further evidence that the intention of the legislature was not to exercise its power of direct taxation.

It follows that the amendment of 1899, whether regarded as a part of the act relating to taxable transfers, or an attempt on the part of the legislature to exercise its general power of taxation, is unconstitutional and void.

The order appealed from should be reversed, with costs, and an order duly entered declaring the estate of Walden Pell, 1st, to be exempt from the transfer tax.

GRAY, O'BRIEN, HAIGHT, CULLEN and WERNER, JJ., concur; PARKER, Ch. J., concurs only on the ground that chapter 76, Laws of 1899, does not provide for a direct tax upon property and in so far as it aims to tax transfers of estates already vested when the act was passed (which is this case), it is void.

Order reversed, etc.