### In re DELANO'S WILL.

(Supreme Court, Appellate Division, First Department. April 17, 1903.)

1. TRANSFER TAX—EXERCISE OF POWER OF APPOINTMENT.

By deed, prior to the time when there was any transfer tax or inheritance tax law, property was given the grantee for life, with power of appointment to any or all of certain persons, with remainder to such persons in default of appointment. The grantee exercised the power of appointment by will, appointing one of such persons to take all the property. *Held*, that as the estate of the appointee was derived from the donor of the power, and became vested under the deeds, and a tax cannot be imposed on property in the guise of a transfer tax, such property rights could not be taxed under Laws 1896, p. 868, c. 908, § 220, subd. 5, incorporated therein by amendment by Laws 1897, p. 150, c. 284, providing that when a person shall exercise a power of appointment derived from any disposition of property, either before or after the passage of the act, the appointment shall be deemed a transfer, as though the property belonged to the donee of the power, and had been given by him by will.

Appeal from Surrogate's Court, New York County.

In the matter of the transfer tax on the property transferred and appointed by the will of Laura Astor Delano, deceased. From an order denying a motion to dismiss the proceedings so far as they relate to Arthur Astor Carey, he appeals. Reversed.

This proceeding was brought to appraise and assess for the purpose of taxation, under the act relating to taxable transfers (chapter 908, p. 795, Laws

1896, as amended by chapter 284, p. 150, Laws 1897), the property of Laura Astor Delano, who died June 15, 1902, leaving a last will and testament, and Arthur Astor Delano was notified to appear therein. His attorneys gave notice of appearance in his behalf, but only for the purpose of objecting to the jurisdiction of the Surrogate's Court, and applied to the surrogate to dismiss the proceeding as to him, and as to certain property mentioned in two deeds, one dated September 30, 1848, and the other September 6, 1849, made by William B. Astor, giving to his daughter Laura Astor Delano, the testatrix, a power of appointment, which power she exercised in her will in favor of the said Arthur Astor Carey. The basis of the application was that the surrogate had no jurisdiction over the property in question, and annexed to the affidavit of the attorneys were the two deeds mentioned. By the first of these deeds, given in 1848, 26 years before his death, William B. Astor (and his wife) conveyed certain real estate to Laura Astor Delano for her life, conditions being therein stated upon the happening of which her estate should cease and determine, and other conditions being included disposing of the property to certain persons named upon her death. The deed then continues: "Provided, however, and power is hereby granted unto the said Laura, in her discretion, to give the said land and premises, or any share or part thereof, to and amongst her said issue, brothers, sister Alida, or their issue (the same persons to whom it would by the deed pass were the power not exercised), in such manner and proportions as she may appoint by instrument in its nature testamentary, to be acknowledged by her as a deed in the presence of two witnesses or published by her as a will." Power was also given her, and the manner and conditions of its exercise stated, whereby she might lease the property or mortgage or sell it (in the latter case the proceeds to be considered as the property itself); and the deed contained a reservation to the grantors whereby they might, during the life of their daughter, "appoint, convey, and settle the said land and premises hereby granted to her sole and separate use in equity, notwithstanding her coverture, with remainders as to them, or the survivor of them, as may seem fit." By the deed of 1849, William B. Astor, in consideration of love and affection to his daughter Laura Astor Delano, granted and transferred to trustees named "fifty thousand dollars of the public debt of the state of Ohio," in the form of certificates, "to receive the interest and income thereof, and to apply the same, as it shall be received, to the use of the said Laura during her life, * * * and upon the further trust, upon her death, to transfer and convey the capital of the said stock to the issue of the said Laura surviving her. * * * But, if she shall leave no issue surviving her, then to transfer the said capital to her surviving brothers and sister Alida, and to the issue of any of them who may have deceased leaving issue then surviving." Then follows the provision: "Provided, however, that it shall be lawful for the said Laura, by any instrument executed duly as a will of personal estate, to dispose of the said capital into and amongst her issue, brothers, sister, and their issue, in such shares and proportions as she may think fit, and upon such limitations, by way of trust or otherwise, as in her discretion may be lawfully devised." A power of sale was also given her, with conditions similar to those in the deed of real estate, it being provided that if the certificates were sold "the fund, into whatever form it may thus be changed, shall stand upon the same trusts, limitations of interest, and powers as are herein expressed, both as to income and capital." After the execution of these deeds, the daughter during her lifetime received the benefits of the property so conveyed to her which remained intact; and, in the second clause of her will, she having previously disposed of other property to other persons, she gave, devised, bequeathed, and appointed to her nephew Arthur Astor Carey the property "described in the deed, * * * deed of settlement bearing date September 30th, 1848, to have and to hold, * * * and to his heirs and assigns forever"; and also devised, bequeathed, limited, and appointed to her said nephew Arthur Astor Carey "fifty thousand dollars of the public debt of the state of Ohio or the proceeds thereof particularly mentioned and described in the * * * deed of settlement bearing date September 6, 1849, to have and to hold, * * * and to his heirs and assigns forever." The application to dismiss, as to Arthur Astor Carey and the property which he thus became entitled to

receive, the proceeding brought to appraise and tax the estate of Laura Astor Delano under the act relating to taxable transfers, was denied, and from the order so entered he appeals.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Lucius H. Beers, for appellant.

George M. Judd, for respondent.

O'BRIEN, J. The portion of the transfer tax law which it is claimed is applicable to the property appointed to the appellant is subdivision 5 of section 220, incorporated in the law by amendment by chapter 284, p. 150, Laws 1897, and providing that:

"Whenever any person or corporation shall exercise a power of appointment derived from any disposition of property made either before or after the passage of this act, such appointment when made shall be deemed a transfer taxable under the provisions of this act in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will. * * *"

In terms the amendment would seemingly apply to the property here in question, because a studied effort has been made by the language employed in the act to destroy any distinction between the disposition of property under a power of appointment made "before or after" the passage of the act. The construction of language identically the same, taken from subdivision 3 of section 1 of the transfer act of 1892 (chapter 399, p. 815, Laws 1892), was involved in the Seaman Case (Matter of Seaman's Estate, 147 N. Y. 69, 41 N. E. 401), and therein it was held (headnote) that such language "is to be restricted to the case of grants or gifts causa mortis, mentioned in the preceding portion of the subdivision, and does not extend to transfers by will or intestacy, so as to subject to taxation rights of succession which accrued before the statute came into existence."

There is the same constitutional objection to giving the amendment of 1897 a retroactive effect, so as to make it apply to instruments which existed and were in force before its passage, as existed in the Seaman Case. Similarly, in Matter of Pell's Estate, 171 N. Y. 48, 63 N. E. 789, 57 L. R. A. 540, with reference to chapter 76, p. 100, Laws 1899, which in terms imposed a transfer tax upon remainders and reversions vesting prior to 1885, it was decided that such a provision in the law was unconstitutional; and therein it was distinctly held, following the decision in Matter of Swift, 137 N. Y. 77, 32 N. E. 1096, that the tax could not be sustained as one upon property, but must be supported as a tax upon the right of succession. As said in Matter of Pell's Estate, supra:

"This court and the Supreme Court of the United States have held in numerous cases that the transfer tax is not imposed upon property, but upon the right of succession. It therefore follows that where there was a complete vesting of a residuary estate before the enactment of the transfer tax statute it cannot be reached in that form of taxation."

Under the deeds of William B. Astor, which are before us for consideration, the rights of the relator were vested, and were, under well-settled rules of law, created by the donor of the power, and not by

the donee, by whom the power was exercised.    In Root v. Stuyvesant, 18 Wend. 257, it is said:

"It appears to be well settled that until the execution of the power the remainders or limitations over take effect the same as if no such power existed, or as in case of default of execution of it. * * * The doctrine is very clearly and succinctly stated by Fearne; and Sugden, after discussing the cases on the point, observes that the result of the authorities is that the power of appointment does not prevent the vesting of the estates limited in default of appointment.    They are, of course, subject to he divested on the execution of the power."

With respect, therefore, to the interests of the relator, we must have in mind the rule that the estate of the appointee under a power is derived from the donor of the power, and not from the donee. Under this familiar rule, the interests of Arthur Astor Carey became vested under the deeds made by William B. Astor in 1848 and 1849, and he would have succeeded to such vested interests had there been a default in the exercise of the power of appointment.

It is true that the donee, in the exercise of the power of appointment, had the right to determine between the individuals in the class in whose favor she was to exercise the power; but, although this rendered the interests of any of the individuals in the class subject to be divested, it created no distinction different from what would have existed if the property had been originally given to Laura Astor Delano for life, with remainder over to persons named, whose interests were to be divested in the event of their dying before the termination of the life estate.    The relator could have been divested of his interests by the exercise of the power of appointment in favor of any other member of the class to whom it was limited, and he may have obtained a much greater estate by reason of the fact that the power was exercised exclusively for his benefit.    It follows, nevertheless, that his rights were obtained under the deeds of the donor which were made long prior to the enactment of any inheritance tax law, and therefore it is only by regarding the transfer act as imposing a tax upon property, which it was held in the Pell's Estate Case, supra, could not, in the guise of a succession tax, be done, that the interests of the relator can be taxed under it.

We have not overlooked Matter of Vanderbilt's Estate, 50 App. Div. 246, 63 N. Y. Supp. 1079, affirmed 163 N. Y. 597, 57 N. E. 1127, wherein the construction of this same subdivision of the statute was involved as bearing upon a case where a testator, who died in 1885, by will gave to his son the income of a trust fund during his life, and power to dispose of the principal by will to his issue.    This power having been exercised on the death of the son, in 1899, it was held that the disposition of the property made under such appointment was taxable under the act.    That decision, however, which at first blush might seem to be controlling, is distinguishable in two features—one that the power of appointment itself was created by will, and the other that such will was made and went into effect at a time subsequent to the enactment of a collateral inheritance tax law.    The power of appointment here involved was not given by will, but was conferred by deed, and at the time the interest of the relator vested there was no inheritance tax or transfer tax law in existence.

Upon reading the authorities, it will be found that the cases point out specifically the fundamental distinction between the power of appointment created by deed and one created by will, as regards the right of the Legislature to impose a transfer tax. As stated, to impose a tax upon a transfer by deed is the exercise of the general taxing power of the state, while a tax upon a power of appointment which has been created by will is a succession tax, depending upon a transfer brought about by death. It is not claimed for this amendment of 1897 that it was the exercise of the general taxing power of the state, and to be supported, therefore, it must be, if at all, upon the theory that it imposes a succession tax.

As said in Matter of Swift, 137 N. Y. 83, 32 N. E. 1097:

"The idea of this succession tax, as we may conveniently term it, is more or less compound; the principal idea being the subjection of property, ownership of which has ceased by reason of the death of its owner, to a diminution by the state, reserving to itself a portion of its amount, if in money, or of its appraised value if in other forms of property."

And in Matter of Sherman's Estate, 153 N. Y. 3, 46 N. E. 1033, it was said:

"The power of a state to tax the right of transfer of property by will or the right of succession, under the intestate laws of the state, is not an open question. It results from the acknowledged principle that the right to dispose of property by will, and of succession thereto in cases of intestacy, is derived from and under the municipal law. * * * It is a tax upon the right of transfer by will or under the intestate law of the state."

It is not, however, within the power of the Legislature merely by calling a tax one upon the right of succession to impose what, in substance and effect, is a tax upon property. In terms, unquestionably, the Legislature has called the estate which the relator has received a succession, and upon the right to such succession has attempted to impose a tax; but it cannot change the legal nature or character of the property interest by applying to it a name, nor can it impose a tax upon property which the relator has received under the deeds of William B. Astor, given in 1848 and 1849, by subsequently enacting that to such property the relator has succeeded under the will of Laura Astor Delano, and that as to it a tax is due as a tax upon the right of succession as though it was property bequeathed or devised by her.

Having in mind, therefore, the fact that the relator obtained his property rights by deed, and not by will, and at a time when there was no transfer tax or inheritance tax law in existence, and that he does not obtain his estate by right of succession under the will of Laura Astor Delano, but acquires it under the deeds of William B. Astor, which were in no sense testamentary in character, but were made many years before the grantor's death, it follows, we think, that the attempt of the Legislature to tax such property rights cannot succeed, and for the reasons that we have briefly outlined, namely, that to uphold the tax here sought to be imposed under the guise of taxing a right of succession would in fact be to sanction a tax upon property, and for that purpose to give to the amendment of 1897 a retroactive effect, which would be violative of the Constitution.

The conclusion renders it unnecessary for us to discuss or determine the question, which has been urged by the appellant with much force,

that in the present instance the Surrogate's Court had no jurisdiction to entertain the proceeding for the purpose of levying the tax.

We think that the order of the surrogate should be reversed, with costs, and the proceeding dismissed as to the appellant. All concur.