(83 App. Div. 381.)

## In re MEYER'S ESTATE.

(Supreme Court, Appellate Division, First Department.   May 15, 1903.)

1. TRANSFER TAX—LEGACY—TIME OF COMPUTATION—INTEREST IN REMAINDER.
    Where a testator bequeaths the income of a legacy to his brother for life, with right in the executors to use the principal, if necessary, for the brother's support, and with remainder to the brother's children, the transfer tax thereon, though it cannot be computed until the death of the life tenant and the interest of the remaindermen becomes apparent, must then be levied on what the sum coming to the remaindermen would have been worth at the testator's death in view of its deferred payment.

2. SAME—STATUTE—RETROACTIVE CHARACTER.
    Transfer Tax Law, § 230 (Laws 1896, p. 874, c. 908, as amended by Laws 1902, p. 1169, c. 496), providing that, when a transfer of property is made on which a tax can be imposed, the property shall be appraised immediately on transfer, or as soon thereafter as practicable; that the value of future estate shall be determined as in ascertaining the value of life insurance policies; and that estates in expectancy, which are contingent or defeasible, the tax on which has been held in abeyance, shall be appraised at their full value when the person entitled shall come into beneficial enjoyment thereof, etc.—does not apply to a remainder vesting on the death of the testator prior to its passage, though the computation of the transfer tax on the remainder is postponed until afterwards on account of the impossibility of sooner determining its amount.
    Laughlin, J., dissenting in part.

Appeal from Surrogate's Court, New York County.

Proceeding by the Comptroller of the State of New York for the taxing of a legacy conferred by the will of William Meyer. From an order fixing the transfer tax, Solomon Loeb, as trustee, and others, appeal.   Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Lewis S. Isaacs, for appellants.

George M. Judd, for respondent.

INGRAHAM, J.   The testator died in the year 1887, leaving a last will and testament, which was duly admitted to probate. This will contained the following clause, under which the question upon this application arises:

"To my brother Louis Meyer of Cleveland, Ohio, and to members of his family I give the income of Forty thousand dollars during his life, the principal of this legacy to be set apart and invested by my executors, and held by them in trust and the income thereof paid to my said brother, or to his family, at the discretion of said executors, at convenient intervals.

"If the income should in their judgment be insufficient to secure the comfortable support of my said brother and his family residing with him, I authorize my executors to apply any portion of the principal to that purpose.

At the death of my said brother such principal or so much of it as remains unexpended as aforesaid shall go to and be equally divided among his issue per stirpes."

After this will was admitted to probate, the executors presented to the surrogate of the county of New York a petition asking that the testator's estate be appraised for the purpose of taxation, whereupon an appraisal was made. The appraiser reported that the "decedent, by his will, also gives to his brother, Louis Meyer, and the members of his family, the income of $40,000 during his life, and with authority to the executors to pay to said Louis part of the principal if the income is insufficient for their support; and at the death of Louis the principal of $40,000, or what remains of same, to be paid to his issue per stirpes. No appraisal can now be made of such bequest of $40,000, nor can it be determined what property will pass to the issue of Louis Meyer." This report was, in this respect, confirmed, and no tax was imposed upon the transfer of this legacy. On the 13th day of May, 1892, Louis Meyer died, leaving issue, to whom, under the will, the principal of the trust fund in the hands of the trustees was payable, whereupon an appraiser was appointed. From the testimony before the appraiser it appeared that this fund of $40,000 was retained by the executors in trust for Louis Meyer; that the total income of this trust fund was paid by the executors to Louis Meyer; and that there was also paid to him out of the principal, in pursuance of the discretion vested in the trustees, the sum of $14,759.42; leaving in the hands of the surviving trustee upon the death of Louis Meyer the sum of $30,900 in cash, the amount of the principal of the trust fund which was payable to the remaindermen named in the will. The appraiser reported that the principal of the said trust fund remaining in the hands of the trustees amounted to the sum of $30,900; that the trustees' commission thereon was $499; leaving a net trust fund of $30,401, which passed, under and pursuant to the will of the testator, upon the death of the said Louis Meyer, life tenant, to his three children; and appraised the property subject to tax at its market value on May 13, 1902, the date of the death of the life tenant; and this appraisement was confirmed by the surrogate. The counsel for the trustee insisted before the appraiser and before the surrogate that the property was to be valued as of the time of the death of the testator, and the tax assessed as of that date, and not as of the date of the death of the life beneficiaries. I think it clear that the remainder vested in these remaindermen at the date of the death of the testator. Under the will, as the trustees had the power to apply a portion of the principal for the support of the life tenant and his family during the existence of the trust, the amount that the beneficiaries would receive could not be definitely ascertained until the death of the life tenant; but the trust fund, subject to its depletion in the exercise of this power given to the trustees, vested absolutely in the beneficiaries upon the death of the testator. Whatever rights the children of Louis Meyer acquired, they acquired at the death of the testator, and it was this right of succession that was taxable under the statute. It is now settled that this tax is a tax on succession, and not a property tax, and that the statute in force at the time the succession was

actually accomplished and the principal vested controls the amount of the tax. Matter of Pell's Estate, 171 N. Y. 48, 63 N. E. 789, 57 L. R. A. 540, 89 Am. St. Rep. 791.

In Matter of Roosevelt's Estate, 143 N. Y. 120, 38 N. E. 281, 25 L. R. A. 695, the testator died in September, 1887, but the proceeding to fix the transfer tax was not brought until after the passage of the act of 1892 (page 814, c. 399). It was held that the tax must be assessed at the rate provided for by the law in force at the time of the death of the testator. In Matter of Davis' Estate, 149 N. Y. 539, 44 N. E. 185, it was held that, where the appraisal and assessment of an expectant estate had been postponed until the precise value of what passes to the remaindermen can be ascertained, the tax must be assessed on the value of the remainder as of the time of the death of the testator. Judge Martin, in delivering the opinion of the court, says:

"Where the estate transferred has a fixed or ascertainable value at the time of the death of the grantor, testator, or intestate, the value at that time must be the basis of the appraisal whenever made; but, if the person to whom the property passed cannot be known until the death of the life tenant, the tax cannot be imposed until after that event. Hence' the appellant's contention that the interest of the respondent was to be appraised as of the time when she acquired possession of the estate cannot be sustained."

The same principle is applied in Matter of Sloane's Estate, 154 N. Y. 109, 47 N. E. 978. Judge Vann, in delivering the opinion of the court, says:

"The transfer or inheritance tax, so far as residents of the state are concerned, is not a tax upon property, but upon the right of succession to property; and hence the true test by which the tax is to be measured is the value of the estate at the time of transfer of title, and not its value at the time of the transfer of possession. * * * Still, whenever the appraisal is made, the value of the property is to be appraised according to the fair and clear market value of the interest at the time of the death of the testator."

The remainder having thus vested in these beneficiaries upon the death of the testator, it was subject by the law then in force to a tax upon that transfer. It was determined that, as the amount of property that was then transferred could not be ascertained, the appraisement of what was transferred should be postponed until such determination was possible. By the death of the life tenant the amount that was then transferred to the remaindermen was definitely ascertained, and it was then the duty of the surrogate to appraise the value of the property that passed to these beneficiaries at the death of the testator, and to impose upon that transfer the tax imposed by the statute. The postponement of the appraisal was occasioned not by any contingency as to the individuals who would ultimately be entitled to what remained of this fund, but because of the impossibility of ascertaining the amount of the fund to which upon the death of the life beneficiaries the remaindermen would be entitled. That amount being fixed, it was the duty of the surrogate to ascertain what was the value at the death of the testator of the remainder which then vested in the remaindermen. That clearly was not the total amount of the fund to which they would become entitled upon the death of the life tenant, but was the value on the 13th day

of October, 1887, of the sum of $30,401, payable on the 13th day of May, 1902. It was this property to which these remaindermen succeeded upon the death of the testator, and it was this property upon which the statute imposed a tax.

It is claimed by the Comptroller, however, that the provisions of section 230 of the Transfer Tax Law (chapter 908, p. 874, of the Laws of 1896, as amended by chapter 496, p. 1169, of the Laws of 1902) justified the appraisement of the remainder at its full undiminished value. This section of the tax law provides that:

"Whenever a transfer of property is made, upon which there is, or in any contingency there may be, a tax imposed, such property shall be appraised at its clear market value immediately upon such transfer, or as soon thereafter as practicable. The value of every future or limited estate, income, interest or annuity dependent upon any life or lives in being, shall be determined by the rule, method and standard of mortality and value employed by the superintendent of insurance in ascertaining the value of policies of life insurance and annuities for the determination of liabilities of life insurance companies, except that the rate of interest for making such computation shall be five per centum per annum. * * * Estates in expectancy which are contingent or defeasible and in which proceedings for the determination of the tax have not been taken or where the tax thereof has been held in abeyance, shall be appraised at their full, undiminished value when the persons entitled thereto shall come into the beneficial enjoyment or possession thereof, without diminution for or on account of any valuation theretofore made of the particular estates for purposes of taxation, upon which said estates in expectancy may have been limited."

The provision of this statute is not in express terms made to apply to a remainder which has vested prior to the passage of the act, and it is a universal principle applicable to the construction of statutes that a retroactive effect will not be given to its provisions unless such an intention is plainly expressed. When this remainder vested, a specific tax was imposed upon the transfer to these beneficiaries. The value of the right to which these beneficiaries succeeded was to be ascertained, and upon that value a tax was imposed.

In the Matter of Pell's Estate, supra, the court quoted from Matter of Seaman that "a right of succession passed to the four living children of George at the death of the testator. It came from him, it was transferred by him, taking effect at his death, and passed then or never"; and said:

"It therefore follows that, where there was a complete vesting of a residuary estate before the enactment of the transfer tax statute, it cannot be reached by that form of taxation. * * * If these estates in remainder were vested prior to the enactment of the transfer tax act, there could be, in no legal sense, a transfer of the property at the time of possession and enjoyment. This being so, to impose a tax based on the succession would be to diminish the value of these vested estates, to impair the obligation of a contract and take private property for public use without compensation."

If we apply this principle, and if a tax was imposed upon these beneficiaries on this transfer on the death of the testator, it would seem to follow that the tax then imposed was the tax, and the only tax, that the state could enforce, and that a subsequent act to increase that tax would be subject to the same objection that was held fatal to the act under consideration in the Matter of Pell's Estate, and therefore beyond the power of the Legislature. We think that,

whether this act is retroactive or not, it failed to impose upon this transfer, which vested in 1887, any greater tax than was imposed by the law then in force, and that the duty of the surrogate was to ascertain the value of the property transferred at the death of the testator, and upon that property thus valued impose the tax authorized by the statute in force at that time.  The value of this property can now be ascertained, and the order appealed from should be reversed, and the proceeding remitted to the surrogate, with $10 costs and disbursements to the appellant.

VAN BRUNT, P. J., and O'BRIEN and McLAUGHLIN, JJ., concur.

LAUGHLIN, J. (dissenting).  I do not agree with the theory upon which the transfer tax was computed, but I think that a correct result has been attained, and, if so, the method of computation is immaterial.  I agree with Mr. Justice INGRAHAM that this transfer tax accrued upon the death of the testator, and that the tax is to be computed according to the statute in force at that time, and that neither the taxability nor the quantum of the tax could be affected by subsequent legislation.  Under the provisions of the statute applicable at that time, the state was entitled to 5 per cent. of the property of the decedent transferred by his will to the appellant, but, on account of the peculiar provisions of the will, by which the life tenant was entitled to principal as well as income, the exact amount of property that passed to the appellant under the will could not be ascertained until the death of the life tenant.  That event having occurred, it is now known that the appellant takes $30,401, and that he came into possession thereof on the 13th day of May, 1902.  Theoretically, the appellant was only taxable at the time of the transfer, the 13th day of October, 1887, that being the date of the death of the testator, upon the then present value or worth of this fund payable upon the death of the life tenant, which occurred on the 13th day of May, 1902; but the state was also entitled to its tax at that time, and it is manifest that it would be entitled to interest thereon since.  If the tax had been deducted, the fund would have been proportionately reduced.  The principal being less, the accumulations thereon would be presumably less.  The appellant has had the benefit of the tax not having been deducted.  I think it is quite clear that, while the appellant was technically only liable for the tax upon the value of the fund at the time of the death of the testator, the state, on the other hand, was entitled to its tax at that time, and is both in equity and law entitled to interest thereon.  If this be so, it is immaterial whether we compute the tax upon the fund passing to the appellant at the rate prescribed by law at the time of the transfer or whether we ascertain the value of that fund at the date of the transfer, and levy the tax upon such value, and then allow the state interest upon the amount of the tax in the meantime; for the result is the same in either event.