them, it was not obliged to do so, nor does the judgment which it did render, upholding the validity of the lien for a small amount, necessarily involve their determination.

I think the judgment should be reversed.

Judgment of the Municipal Court reversed, and new trial ordered, costs to abide the event. All concur.

## In re CRAIG'S ESTATE.

(Supreme Court, Appellate Division, Second Department. October 11, 1904.)

1. TRANSFER TAX—TRUST DEED EXECUTED BEFORE ENACTMENT OF STATUTE.

Where one in contemplation of marriage, only, by deed containing no power of revocation, transfers his property to trustees, to pay the income to him for life, and on his death to pay the principal in certain proportions to his widow and the issue of the marriage, and the marriage took place, and the issue were born, all before passage of any transfer tax law, the interests of the remaindermen then accrued, and their right to take on the death of the life tenant could not thereafter be made subject to a transfer tax.

Appeal from Surrogate's Court, Orange County.

In the matter of the transfer tax of the estate, conveyed in trust for his own benefit, of Hector Craig, now deceased. From an order of the Surrogate's Court affirming on appeal an order entered in said court assessing a transfer tax on the estate of said deceased, Mary D. Craig and Frederick P. Craig and another, widow and children of deceased, appeal. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Howard Thornton, for appellants.
Henry W. Wiggins, for respondent.

HIRSCHBERG, P. J. The appeal taken to the Surrogate's Court from the order assessing the transfer tax was based upon the ground, as stated in the notice of appeal, that the interests of the appellants "were vested prior to the passage of any act taxing transfers of property, and that, therefore, the same are not liable for taxation under the provisions of the act above referred to"; the reference being to the tax law (chapter 908, p. 795, of the Laws of 1896) and the acts amendatory thereof. For the purposes of this appeal the interests of the appellants in the estate of Hector Craig, the deceased, are to be regarded as accruing under the terms and provisions of a trust deed executed and delivered by him on December 20, 1875. By that deed he transferred all his property of every kind and nature to certain trustees in contemplation of his then pending marriage with the appellant Mary D. Craig (then Mary W. Darrach), and for the purpose, as recited in the deed, of making provision for her in case the marriage takes place and she survives him as his widow, and of otherwise providing for the management and disposition of his estate. No power of revocation is contained in the deed. By its terms the net income of all the property was made payable to the deceased during his lifetime, and at his death the

principal was to be paid over to his widow and the issue of the marriage in specified proportions. There are many other provisions in the deed which it seems unnecessary to mention. Mr. Craig died May 29, 1901, leaving the appellants, his widow and children; and it is undisputed that by virtue of the trust deed and certain legal proceedings in relation to it had between its execution and the grantor's death, and certain releases executed by other beneficiaries named in the deed prior to May 9, 1885, the appellants have become entitled to the entire estate. The record does not make it clear at what date the marriage took place. It may be assumed, however, that it occurred prior to May 9, 1885, the date of an order made by the Supreme Court, and annexed to the petition by which these proceedings were instituted, and in which order the appearance of Mrs. Craig by attorney is recited. The fact of the marriage and its existence at that date seems to be conceded in the respondent's brief, as well as the fact that it was solemnized · between the individual named in the trust deed and the donor thereof, the deceased. It further appears that the appellants the children of the deceased were born prior to that date.

It seems to me to be immaterial to consider whether the remainders created by the trust instrument to which the appellants have now become entitled are to be regarded as vested or contingent, or whether the instrument is to be regarded as conveying such remainders as gifts inter vivos or as gifts causa mortis. The point presented by the appeal is that the right as a property right to take the gifts when the time for possession and beneficial enjoyment should ultimately arrive had fully accrued at the date of the marriage and the birth of the children free from any existing tax upon the transfer either made or contemplated, and that subsequent legislation imposing such a tax must be deemed unconstitutional, as, in effect, the taking of private property for public use without compensation, or as impairing the obligation of a contract. In other words, the appellants contend that at least as early as May 9, 1885, they had acquired their rights by irrevocable deed; that such rights, whether vested or contingent, then constituted present property interests in future estates, which were vested in the sense that they were secured to them by deed, subject only to contingencies as to time and survivorship; that incident to the ownership of such property was the absolute right to its acquisition in possession and enjoyment at the stipulated time; and that such ultimate right of possession and enjoyment, being absolute, and not merely privileged, could not afterwards be taxed by the state, because of well-settled principles of constitutional law. I am inclined to the view that the contention is sound. In the discussion the appellants must be regarded on May 9, 1885, as being in the same position as they would have been in if the remainders had been acquired by purchase instead of gift, and it cannot be that the state can levy an assessment upon the right of a citizen to enjoy the fruits of a · prior purchase, which, when made, was wholly free from such an imposition.

The first law taxing inheritances was passed June 10, 1885. Chapter 483, p. 820, Laws 1885. It was followed by the act in relation to taxable transfers of property (chapter 399, p. 814, Laws 1892), and subsequently by the present tax law hereinbefore referred to (chapter 908,

p. 795, Laws 1896), the provision for the ascertainment of the tax be-ing contained in section 230 of the act. It cannot be doubted that the appellants' shares are in terms subject to the provisions of the statute. Section 230 was amended by chapter 76, p. 100, of the Laws of 1899, so as to provide that:

"All estates upon remainder or reversion, which vested prior to June thir-tieth, eighteen hundred and eighty-five, but which will not come into actual possession or enjoyment of the person or corporation beneficially interested therein until after the passage of this act shall be appraised and taxed as soon as the person or corporation beneficially interested therein shall be en-titled to the actual possession or enjoyment thereof."

In both the act of 1892 and the existing act it is provided that trans-fers by deed or gift, made in contemplation of the death of the grantor, or intended to take effect, in possession or enjoyment, at or after his death, shall be taxed when the grantee or donee becomes beneficially entitled in possession or expectancy to the property given by the trans-fer, whether made before or after the passage of the act. Laws 1892, p. 815, c. 399, § 1, subd. 3; Laws 1896, p. 869, c. 908, § 220, subd. 3.

In Matter of Pell, 171 N. Y. 48, 63 N. E. 789, the Court of Appeals held that the amendment effected by the statute of 1892, supra, pro-viding for a tax upon remainders vesting prior to June 30, 1885, but coming into actual possession after the passage of the amendment, was unconstitutional where the right to the succession accrued by will upon the death of the testator prior to the legislation. The court said (page 55, 171 N. Y., page 791, 63 N. E.):

"Where there was a complete vesting of a residuary estate before the enact-ment of the transfer tax statute, it cannot be reached by that form of taxation. In the case before us it is an undisputed fact that these remainders had vested in 1863, and the only contingency leading to their divesting was the death of a remainderman in the lifetime of the life tenant, in which event the children of the one so dying would be substituted. If these estates in remainder were vested prior to the enactment of the transfer tax act, there could be, in no legal sense, a transfer of the property at the time of possession and enjoyment. This being so, to impose a tax based on the succession would be to diminish the value of these vested estates, to impair the obligation of a contract, and take private property for public use without compensation."

In considering the question, the word "vested" as used in the above and many other opinions is really to be construed as equivalent to the word "accrued," and not as distinguished from merely contingent in-terests. In that sense a property right which has been fully acquired is protected by the contract, and becomes in law a vested right, the en-joyment of which is not to be deemed as only a privilege, and as such consequently subject to taxation upon the right of enjoyment. Re-ferring to the Pell Case in Matter of Vanderbilt, 172 N. Y. 69, 73, 64 N. E. 782, 783, Judge Cullen said:

"In that case the interests of the devisees and legatees attempted to be taxed were given by the will of the testator, who had died long prior to the enact-ment of any inheritance tax. Technically, they may have been, and probably were, vested subject to be divested by death before the demise of the life tenant, but in the ordinary sense of the term they were contingent, that is to say, it was impossible to determine who would actually enjoy the property until the death of the life tenant. Nevertheless the interests of the devisee accrued on the death of the testator, and at that instant, and were immune from legisla-tive attack whether contingent or vested.".

In a like sense it may be said that the interests of the appellants herein accrued on the execution and delivery of the trust deed, and the happening of the events which made them beneficial parties to it. They then acquired contractual rights which were immune from subsequent legislative attack. To the same effect as Matter of Pell, supra, is Matter of Harbeck, 161 N. Y. 211, 55 N. E. 850. There seems to be no case to the contrary. Those cited by the learned counsel for the respondent (Matter of Green, 153 N. Y. 223, 47 N. E. 292, Matter of Brandreth, 169 N. Y. 437, 62 N. E. 563, 58 L. R. A. 148, and Matter of Cornell, 170 N. Y. 423, 63 N. E. 445) are all cases where the will or deed, as the case may be, was either executed or took effect after the passage of the laws imposing a tax upon inheritances or transfers. In Matter of Seaman, 147 N. Y. 69, 41 N. E. 401, it is true that something is said which may seem to be in conflict with the view I am taking, but I am sure there is nothing in the actual decision to that effect. That was the case of a will followed by the death of the testator in the year 1876; and it was held that the devise of a defeasible remainder works a vested interest in the remainderman on the death of the testator, notwithstanding possession must await the death of the life tenant; and that, if the testator died prior to the enactment of the taxable transfer act of 1892 (chapter 399), the remainder is not taxable under that act. The decision was precisely in line with that in the Pell Case. But the court considered the effect of the clause in subdivision 3 of section 1 of the act of 1892 (page 815, c. 399), providing that the transfer tax should be imposed when the beneficiary became beneficially entitled to the property in possession or expectancy, whether the transfer was made before or after the passage of the act; and held that such clause was not retroactive, was designed to be restrictive to the case of grants or gifts causa mortis, and did not extend to transfers by will or by intestacy. The question of the constitutionality of the clause when applied to the case of a grant preceding the enactment was not considered, and, the clause having no application whatever to the case at hand, that question could not have been determined. Judge Finch said (page 77, 147 N. Y., page 403, 41 N. E.):

"A grantor may have conveyed and delivered his deed before 1892, in contemplation of death, and to take effect upon the happening of that event, or reserving a power of revocation, as well as the possession or enjoyment, during his lifetime; and the Legislature certainly intended to put such a transfer on the same footing as one by will. It is of no consequence that the will was executed before the statute if the death occurs after, and the same rule was intended to be explicitly applied to grants causa mortis. Though the deed precedes the tax law, as the execution of the will precedes that law in a possible case, yet the transfer in both instances is to date from the one event which makes it operative and effective."

Conceding that the language quoted may be strictly accurate in the case of a grant such as is suggested, it cannot be applied unqualifiedly to the case at bar. No reference is made to that provision in the clause of the enactment which relates to a grant intended to take effect in possession or enjoyment at or after the death of the grantor, which is quite consistent with the conveyance of a present estate in the grantee, notwithstanding the postponement of possession and enjoyment. The deed in this instance was made not in contemplation of death, but of

marriage, and was designed to make an effective provision in præsenti for the prospective wife and the possible offspring. No reservation being made of the power of revocation, it became operative and effective as a grant upon execution and delivery, wholly irrespective of the time when possession was to be given of the estate conveyed, to the same extent and in the same sense and degree as a devise of a remainder becomes operative and effective upon the death of a testator during the existence of an intermediate estate; and the logic which precludes legislative impairment in the one case is equally imperative in the other. The difference between rights and interests conferred or created by the execution of a will and those conferred or created by the execution and delivery of a deed is inherent. The will may be canceled and revoked, or other testamentary disposition made, without in general impairing any property rights of the devisees. But whatever rights are conferred or created by deed are conferred or created generally when the deed becomes operative and effective as such, and when conferred or created without the power of revocation cannot be afterwards affected or destroyed by either the grantor or the law.

I do not lose sight of the fact that the transfer tax is levied not upon the property affected, but upon the right of succession. The underlying principle which supports the tax is that such right is not a natural one, but is in fact a privilege only, and that the authority conferring the privilege may impose conditions upon its exercise. But when the privilege has ripened into a right it is too late to impose conditions of the character in question, and when the right is conferred by a lawfully executed grant or contract it is property, and not a privilege, and as such is protected from legislative encroachment by constitutional guaranties.

The order should be reversed, and the proceedings dismissed.

Order of the Surrogate's Court of Orange County reversed, with costs, and proceedings dismissed. All concur.