so serious doubts as to whether the plaintiff could obtain payment of his claim by mandamus. The proper remedy was to sue the city and recover in an action at law. Here the amount was not based upon any specific contract. The reasonableness of employing three watchmen to prevent large iron beams from disappearing is certainly open to question, and, as before stated, the value of the use and occupation of these lots is not at all established. A different question presented is where the amount of the claims is liquidated, the only question being a question of law as to whether or not the city was responsible, as under a specific contract a specific amount is due; but where the right of the relator to recover and the amount of his recovery, if the city is liable at all, depends upon evidence, the court should not upon an application for a mandamus determine the question, but should leave the relator to his action at law.

I think the order appealed from should be reversed, with $10 costs and disbursements, and the motion for a mandamus denied, with $10 costs. All concur.

O'BRIEN, P. J. I concur in result on ground that mandamus is not the proper remedy.

---

(115 App. Div. 205)

## In re KIDD'S ESTATE.

(Supreme Court, Appellate Division, First Department. November 5, 1906.)

1. TAXATION—TRANSFER TAXES—COMPROMISE—STATUTES.
   Where the court had not decided that the amount of the transfer tax on remainders created by a will could not be ascertained, the executor in the will and the State Comptroller could not compromise the amount of the taxes under Tax Laws, as amended by Laws 1901, p. 388, c. 173, § 230a, authorizing the composition of the transfer tax on estates where the interests of legatees or devisees are not ascertainable, etc.

2. SAME.
   Where it had been judicially determined that the estate of a decedent on which the executor undertook to compromise the transfer tax did not pass under the will of the decedent, the executor had no jurisdiction over it.

3. SAME—LIABILITY TO TRANSFER TAX—ESTOPPEL.
   The fact that a person as a devisee in a will was made a party to the appraisal proceedings for the ascertainment of the transfer tax, which was subsequently discontinued, and thus had notice that a compromise of the amount of the transfer tax was made, did not estop him from asserting rights under a decree for the specific performance of testator's antenuptial agreement, whereby the property passed to him freed from a transfer tax.

4. SAME—JURISDICTION OF COURT.
   Under Tax Law, §§ 228–230 (Laws 1896, pp. 872, 874, c. 908), conferring on the Surrogate's Court jurisdiction to determine questions arising under the statute, and providing that it shall direct the appointment of an appraiser to fix the market value of the property of persons whose estates shall be subject to the payment of any transfer tax, etc., the Surrogate's Court has jurisdiction to determine whether property which came into the hands of an executor of a testator, but to which a third person was entitled under testator's antenuptial contract, was subject to a transfer tax.

**5. SAME.**

A person acquiring property under the antenuptial contract of a testator, disposing of his property by will contrary to the provisions thereof, and the executors of the testator are entitled to invoke the jurisdiction of the Surrogate's Court to determine whether the property acquired under the antenuptial contract is subject to a transfer tax.

**6. SAME—PROPERTY SUBJECT TO TRANSFER TAX.**

Property acquired by one under an antenuptial contract of a decedent, antedating the transfer tax law, is not subject to a transfer tax.

[Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Taxation, § 1676.]

**7. SAME—SUIT TO DETERMINE LIABILITY TO TRANSFER TAX—PARTIES.**

In a suit for the specific performance of an antenuptial contract, made before the transfer tax act, of a testator leaving a will disposing of his estate contrary to the contract, the State Comptroller is not a necessary party, under Code Civ. Proc. § 447, providing that in an action affecting property on which the state has a claim under the transfer tax act the people may be made a party defendant, though the decree granting specific performance will deprive the state of a right to a transfer tax.

Clark and Ingraham, JJ., dissenting.

Appeal from Special Term, New York County.

In the matter of the transfer tax on the estate of George W. Kidd, deceased. From a decree of the Surrogate's Court adjudging that the estate of the decedent was exempt from taxation under the act imposing a transfer tax, William O. Wilson, acting Comptroller of the State, appeals. Affirmed.

Argued before O'BRIEN, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Jabish Holmes, Jr. (Robert C. Cumming, on the brief), for appellant.

Henry Hirschberg (Thomas B. Casey and Joseph F. McCloy, on the brief), for respondents.

LAUGHLIN, J. The order was made on the 2d day of July, 1906, on the joint application of the executors of said estate and of Grace Georgette Dickinson. The application was opposed by the appellant, upon the ground that the executor and Comptroller of the State, on the 25th day of March, 1905, duly compromised the tax payable by the estate, pursuant to the provisions of section 230a of the tax law, added by chapter 173, p. 388, Laws 1901.

The decedent died on the 3d day of December, 1901, leaving personal property worth about $600,000 and real estate worth about $350,000, and debts aggregating less than $50,000. He left a will purporting to devise and bequeath all of his estate, and it was duly admitted to probate as a will of both personal and real property on the 5th day of April, 1903. In July, 1903, the respondent Grace Georgette Dickinson commenced an action in the Supreme Court against the executor, the heirs and next of kin, the legatees and devisees, of the decedent for the specific performance of an antenuptial contract made by the decedent, her stepfather, with her mother, in and by which he agreed, in consideration for her mother's marrying him on the 19th day of November, 1875, and advancing to him for use in his business the sum of $40,000, among other things, that he would adopt said Grace Georgette Dick-

inson, and give her his name and make her his heir, and in the event that he died without issue of said marriage, which event in fact transpired, he would will, bequeath, and devise to her all of his property. The issues in said action were duly tried, and on the 16th day of May, 1905, a decree was duly entered therein, establishing the validity of said antenuptial contract, and decreeing that the defendants specifically perform the same by assigning, transferring, and delivering to her any and all property of the estate remaining in their hands, and to account to her for any thereof received by them which for any reason they are unable to turn over to her. No appeal has been taken from the decree, and as the time to appeal therefrom has expired, it has become final and conclusive on all parties to the action. In the meantime, and on the 18th day of January, 1904, on the petition of the State Comptroller, an appraiser of the estate had been duly appointed. On the 25th day of March, 1905, and before the appraiser made a report, the executor and Comptroller made an agreement, purporting to be pursuant to the provisions of section 230a of the tax law (chapter 908, Laws 1896), added by chapter 173, p. 388, Laws 1901, compromising the tax at $10,000, upon the theory that the entire estate, after paying debts and devising real estate of the value of $200,000 to his widow (rendering that part thereof exempt from taxation), was left in trust, and that it was impossible to ascertain the duration of the trusts, or the persons who would ultimately become entitled to the remainder, or the amount of tax that should be paid thereon. Thereafter, and on the 11th day of May, 1906, on the affidavit of the executor, showing the compromise and the consent of the Comptroller, the Surrogate's Court made an order vacating the order appointing the appraiser.

The application to have the estate declared exempt from transfer tax was opposed upon the ground that, the tax having been compromised under the statute, the Surrogate's Court was without jurisdiction in the premises. The first answer to this objection suggested by the respondents is that the compromise agreement was void because it had not been previously decided by the court that the amount of the tax on the remainders could not be ascertained. As already observed, the statute in force at the time the agreement compromising the taxes was made, and applicable thereto, was section 230a of the tax law (added by chapter 173, p. 388, Laws 1901), and it provided as follows:

"The county treasurer of any county in which the office of appraiser is not salaried, by and with the consent of the Comptroller of the state of New York, expressed in writing, and the State Comptroller in any other county, by and with the consent of the Attorney General expressed in writing, is hereby empowered and authorized in a county in which they receive payments on account of transfer tax, to enter into an agreement with the trustee of any estate therein situate, in which remainders or expectant estates have been of such a nature, or so disposed and circumstanced, that the taxes therein were held not presently payable, or where the interests of the legatees or devisees were not ascertainable under the provisions of chapter four hundred and eighty-three of the laws of eighteen hundred and eighty-five; chapter three hundred and ninety-nine of the laws of eighteen hundred and ninety-two, or chapter nine hundred and eight of the laws of eighteen hundred and ninety-six, and the several acts amendatory thereof and supplemental thereto; and to compound such taxes upon such terms as may be deemed equitable and expedient; and to grant discharge to said trustees upon the payment of the taxes provided

for in such composition; provided, however, that no such composition shall be conclusive in favor of said trustees as against the interests of such cestuis que trust, as may possess either present rights of enjoyment, or fixed, absolute or indefeasible rights of future enjoyment, or of such as would possess such rights in the event of the immediate termination of particular estates, unless they consent thereto, either personally, when competent, or by guardian or committee. Composition or settlement made or effected under the provisions of this section shall be executed in triplicate, and one copy shall be filed in the office of the State Comptroller, one copy in the office of the surrogate of the county in which the tax was paid, and one copy to be delivered to the executors, administrators or trustees who shall be parties thereto."

The objection suggested, and others which suggest themselves, namely, whether the statute authorizing compromises is not confined to cases where the decedent died prior to the amendment of section 230 of the tax law enacted by chapter 76 of the Laws of 1899, designed to require the immediate payment of taxes upon "property transferred in trust or otherwise," where "the rights, interests, or estates of the transferees are dependent upon the contingencies or conditions whereby they may be wholly or in part created, defeated, extended, or abridged," and in other cases specified in that or subsequent amendments, and whether it would be applicable to this estate if it passed under the will of the decedent, and whether the compromise would be binding on one claiming under the will, need not be passed upon at present. Here it has been judicially determined that the estate upon which the executor undertook to compromise the tax did not pass under the will at all, and therefore the executor had no jurisdiction over it. The person decreed to be the owner of the property by virtue of the antenuptial agreement was not a party to the compromise agreement. The executor, so far as appears, did not assume to, and was not authorized to, represent her. The fact that she, as a devisee or legatee under the will, was made a party to the appraisal proceeding, which was subsequently discontinued, and thus may have had notice that the compromise was made, does not estop her from now asserting her rights under the decree for a specific performance, which she could not then have asserted as a valid objection to the appointment of an appraiser or to the discontinuance of the appraisal proceeding, which, as has been seen, was based on the compromise agreement. It now clearly appears that the estate left by the decedent to pass under his will, or, in other words, not lawfully disposed of in his lifetime, was not such as in any view of the statute could confer jurisdiction upon the executor and Comptroller to compromise the tax. On the uncontroverted facts, there was no taxable transfer.

The remaining question is, whether the Surrogate's Court was authorized to make the order, assuming, as we hold, that the compromise agreement was no obstacle. That question must be answered in the affirmative. Section 230 of the tax law (Laws 1896, p. 874, c. 908) provides that the surrogate shall, either on his own motion or on the application of "any interested person, including the State Comptroller," direct a salaried appraiser, appointed pursuant to the provisions of section 229 thereof, or, in counties where there is no salaried appraiser, the county treasurer, "to fix the fair market value of

property of persons whose estates shall be subject to the payment of any tax imposed by this article."

Section 228 of the tax law (Laws 1896, p. 872, c. 908) provides, among other things, as follows:

"The Surrogate's Court * * * shall have jurisdiction to hear and determine all questions arising under the provisions of this article, and to do any act in relation thereto authorized by law to be done by a surrogate in other matters or proceedings coming within his jurisdiction."

It thus appears that the Surrogate's Court is given express authority to determine the taxability of property under the transfer tax law, so called. It necessarily follows that it had jurisdiction, if properly invoked, to determine whether this property which came into the hands of the executor, but to which said Grace Georgette Dickinson was entitled under the antenuptial contract made by the decedent with her mother, was taxable. Both she and the executor were interested parties, who had a right to invoke the jurisdiction of the court on notice to the State Comptroller, which was given. The facts being uncontroverted and not capable of successful challenge, there was no necessity of appointing an appraiser. The beneficiary acquired vested rights under the antenuptial contract, which antedated the collateral inheritance and transfer tax laws so called, and the property to which she was entitled thereunder was not subject to the transfer tax. Matter of Pell's Estate, 171 N. Y. 48, 63 N. E. 789, 57 L. R. A. 540; Matter of Craig's Estate, 97 App. Div. 289, 89 N. Y. Supp. 971, affirmed 181 N. Y. 551, 74 N. E. 1116; Matter of Baker's Estate, 83 App. Div. 530, 82 N. Y. Supp. 390, affirmed 178 N. Y. 575, 70 N. E. 1094; Matter of Miller's Estate, 77 App. Div. 473, 78 N. Y. Supp. 930.

The Comptroller was not a necessary party to the action for specific performance of the antenuptial contract. Section 447 of the Code of Civil Procedure should not receive a construction which would authorize the Comptroller to obstruct such a litigation, commenced and prosecuted in good faith. The right of the people of the state to tax a transfer to the heirs, devisees, legatees, or next of kin depends upon whether or not there was a transfer to them. I am of opinion that where in an action against them and the executor it has been decided by a court of competent jurisdiction that there was no transfer, such adjudication, in the absence of fraud or collusion, should be deemed binding in a proceeding to determine whether or not there has been a transfer of the property which subjects it to taxation. The direct effect of the decision was an adjudication that there was no transfer under the will, and the indirect effect followed that, no interest having been transferred, nothing passed to which the tax could attach. The interests of the people only attached after the interests of the claimant under the will were conceded or established. It would seem, therefore, at least in the absence of fraud or collusion, that the decision between the real parties in interest, which adjudges that nothing passed under the will, would preclude the state from imposing a tax which would only be assessed against an interest transferred by the will. However, in the case at

bar, no attempt was made to impeach the decree for specific performance, and therefore it is not necessary to decide to what extent, if any, it would be open to attack before the Surrogate's Court. It was taken and followed as prima facie evidence of the right of Grace Georgette Dickinson to the property, and in this I deem it quite clear that no error was committed.

It follows that the order should be affirmed, with costs.

O'BRIEN, P. J., and SCOTT, J., concur. INGRAHAM and CLARKE, JJ., dissent.