### BLAIR v. HEROLD.

(Circuit Court, D. New Jersey. January 29, 1907.)

1. TAXATION—LEGACY TAXES—PROPERTY SUBJECT.

The war revenue act (Act Cong. June 13, 1898, c. 448, 30 Stat. 448 [U. S. Comp. St. 1901, p. 2286]) provides that any person having in charge or trust, as administrators, executors, or trustees, any legacies or distributive shares arising from personal property exceeding $10,000 in actual value passing after passage of the act, either by will or the intestate laws of any state or territory, or any personal property transferred by "deed, grant, bargain, sale or gift," made to take effect in possession or enjoyment after the death of the grantor or bargainer, etc., shall be subject to a tax. *Held*, that the words, "by deed, grant, bargain, sale or gift," as used in such act, referred to transfers without consideration only operative by way of gift.

2. SAME — TRANSFER · OF PROPERTY — PARTNERSHIP ARTICLES — CONSTRUCTION — VESTED RIGHTS.

Testator, his son, and several others formed a partnership to engage in the banking business for a period of 10 years. The articles provided that the death of one or more of the partners, so long as three members of the firm survived, should not work a dissolution, and that in consideration of mutual stipulations and valuable considerations received by testator from the other parties to the contract, on testator's death, his share in the capital and profits of the firm should become absolutely vested in his son as his property, etc. *Held*, that, the son acquired a vested interest in his father's interest in the partnership property under the partnership agreement by a grant based on a sufficient consideration which was defeasible only on the survivorship of the testator beyond the partnership period, and hence such interest, having vested in possession independent of testator's will, was not subject to taxation under the war revenue act (Act June 13, 1898, c. 448, 30 Stat. 448 [U. S. Comp. St. 1901, p. 2286]).

On Contract.

George M. Shipman (James Byrne, Charles A. Boston, and Elihu Root, Jr., of counsel), for plaintiff.

John B. Vreeland, U. S. Dist. Atty., and H. P. Lindabury, Asst. U. S. Dist. Atty., for defendant.

CROSS, District Judge. The above case was tried before the court without a jury; a jury having been waived pursuant to the statute. The attorneys of the respective parties have agreed upon a statement of facts in the nature of a special verdict, to be filed in the case, so that I am absolved from the duty of finding them. The action is brought to recover certain taxes paid by the plaintiff as executor, levied pursuant to section 29 of an act entitled, "An act to provide ways and means to meet war expenditures and for other purposes," passed June 13, 1898 (30 Stat. 448, c. 448 [U. S. Comp. St. 1901, p. 2286]), the important part of which section in this connection is as follows:

"That any person or persons having in charge or trust, as administrators, executors or trustees, any legacies or distributive shares arising from personal property, where the whole amount of such personal property as aforesaid, shall exceed the sum of ten thousand dollars in actual value, passing, after the passage of this Act, from any person possessed of such property, either by will or by the intestate laws of any State or Territory, or any personal property or interest therein, transferred by deed, grant, bargain, sale, or gift, made or intended to take effect in possession or enjoyment after the death of the grantor or bargainer, to any person or persons, or to any body or bodies, politic or corporate, in trust or otherwise, shall be, and hereby are, made subject to a duty tax, to be paid to the United States, as follows—that is to say: Where the whole amount of said personal property shall exceed in value ten thousand and shall not exceed in value the sum of twenty-five thousand dollars the tax shall be," etc.

John I. Blair, late of Blairstown, Warren county, N. J., died December 2, 1899, leaving a last will and testament, which was duly proved before the surrogate of said county, and letters testamentary were issued thereon to the plaintiff, De Witt Clinton Blair, on the 28th day of December aforesaid, who thereupon took upon himself the burden of administering the estate of said decedent. By a clause of said will the residuary estate of the testator was devised to his son, said De Witt Clinton Blair. On the 18th day of April, 1890, the decedent John I. Blair, said De Witt Clinton Blair, and three other persons, entered into

a copartnership agreement to conduct a general banking business un-der the name of Blair & Co., in the city of New York. The partner-ship was to be continued for 10 years, and for such further period as might be mutually agreed upon by the parties. It was also provided that the death of one or more of said partners, so long as three mem-bers of the firm survived, should not work a dissolution of the copart-nership. The more pertinent items of the partnership agreement to the question presented for consideration are the following:

"VIII. It is hereby mutually agreed, that in consideration of the mutual stip-ulations of these articles, and for the further consideration of one hundred dollars ($100) paid by De Witt C. Blair, (the receipt whereof is hereby ac-knowledged by said John I. Blair) and the love and affection borne by the said John I. Blair, to his son, the said De Witt C. Blair, and for divers other good and valuable considerations received by said John I. Blair from the other par-ties to this agreement, that upon the death of the said John I. Blair, should the same happen during the period herein or hereafter agreed for the contin-uance of said copartnership, all of the rights, title, share, equities and demands whatsoever, then theretofore owned and remaining, or then held, or claimed by the said John I. Blair in the said capital, or any increase or profits thereon, or of, in or to any of these assets or rights of said firm, shall, upon such death, become transferred to, vested in, and owned by the said De Witt C. Blair, ab-solutely, as his property.

"IX. In consideration of the premises, it is further agreed by all the parties hereto that, upon the happening of the contingency provided for in article VIII above, the said share, rights and property so accruing to the said De Witt C. Blair, from the said John I. Blair, at the latter's death, shall continue and be retained in the said copartnership business during the term or terms of its continuance herein or hereinafter agreed upon between the said parties. And the said De Witt C. Blair shall succeed to all of the benefits, rights and relations under such accruing right, title and share in the same manner as said John I. Blair would have been entitled to, if living, said De Witt C. Blair, tak-ing the place of his said father."

The total value of the interest of said John I. Blair in the copartner-ship at the time of his death, including surplus and undivided profits, was $1,321,332, upon which sum a tax was levied under said act at the rate of $2.25 for every $100, aggregating $29,729.97. This amount was paid by the plaintiff under protest July 2, 1906, and its recovery, with interest, is sought by this suit. It will be noticed that the part-nership agreement was entered into eight years before the passage of the war revenue act. Consequently no claim can be made that it in-volved any intention to evade the provisions of that act. A succession tax is a special tax, and an act intended to impose it must be construed most strongly against the government, and a clear authority for the imposition of the tax must be found in the statute. In the case of Eid-man v. Martinez, 184 U. S. 578, 22 Sup. Ct. 515, at page 517, 46 L. Ed. 697, at page 582, the court said:

"The question in each case is not of the power of the Legislature to tax the personal property of nonresidents, both tangible and intangible, since that is well established both in England and America (Mager v. Grima, 8 How. [U. S.] 490, 12 L. Ed. 1168), but of its intent to do so by the particular act in ques-tion. The inheritance tax law of the United States above cited applies to property 'passing by will or by the intestate laws of any state or territory.' As the property in this case did not pass under any will executed in any state or territory of the United States, or by the intestate laws of any such state or territory, the case is not within the literalism of the act, unless we are to use the word 'state' in a sense broad enough to include a foreign state or terri-

tory. As matter of fact, the decedent was a Spanish subject, who had never resided in the United States, had executed a will at Paris in the Spanish language, pursuant to the laws of Spain, under which will one-third of his property passed to his son and two-thirds to the same person under the intestate laws of Spain. The property left by the will consisted of federal, municipal, and corporation bonds, in custody of the agents of the deceased in New York. It is the locality of the property within the jurisdiction of the United States which subjects it, if at all, to the legacy or succession tax. It is an old and familiar rule of the English courts, applicable to all forms of taxation, and particularly special taxes, that the sovereign is bound to express its intention to tax in clear and unambiguous language, and that a liberal construction be given to words of exception confining the operation of duty"—citing cases.

The theory upon which the government proceeded in assessing this tax must of necessity have been that the plaintiff was a person "having in charge or trust * * * as executor * * * personal property or an interest therein, transferred by deed, grant, bargain, sale, or gift, made or intended to take effect in possession or enjoyment after the death of the grantor or bargainor, to any person or persons," etc. On the part of the plaintiff it is claimed, among other things, that De Witt Clinton Blair never had in his hands, as executor, any interest in this copartnership which John I. Blair had up to the time of his death, and that such interest was not transferred, to use the language of the statute, "by deed, grant, bargain, sale, or gift," because these words all refer to transfers made without consideration, and are therefore inapplicable to the transaction in question. It consequently becomes important at the very outset of this inquiry to determine the meaning of the words, "transferred by deed, grant, bargain, sale or gift." So far as I am informed, they have never received any direct construction by the Supreme Court, or other of the federal courts. They have, however, been construed, and their meaning determined by the courts of several of the states. In Hagerty v. State, 55 Ohio St. 613, 45 N. E. 1046, it was argued that the following language of the Ohio act: "That all property * * * which shall pass * * * by deed, grant, sale or gift, made or intended to take effect in possession or enjoyment after the death of the grantor"—rendered the law of 1894, in which it was found, unconstitutional, because it applied to sales in the ordinary course of business, for valuable consideration, and thereby restrained the owner's guarantied right freely to sell and convey his property. In reply to this argument the court said:

"It is further objected that the act is invalid because the provision that all property 'which shall pass by will * * * sale or gift' shall be subject to the imposition invades the owner's guarantied right to sell and convey property, which right is embraced within its enjoyment. But the meaning of the word 'sale,' as used in the statute, is to be determined by the maxim, 'Noscitur a sociis,' and it includes only transactions which in form sales are, in fact, gifts."

In construing a clause of the New York act, which reads as follows: "When the transfer is of property made * * * by deed, grant, bargain, sale, or gift made in contemplation of the death of the grantor, donor or vendor, or intended to take effect in possession or en-

joyment, at or after such death"—the court said, Matter of Birdsall, 22 Misc. Rep. 180, 49 N. Y. Supp. 450:

"It is very evident that the word 'deed,' as used in this act, has no reference to a conveyance of property by such an instrument made in the ordinary course of business for a valuable consideration, but is confined to conveyances of real property intended as gifts."

And in the Matter of Miller, 77 App. Div. 481, 78 N. Y. Supp. 934, the same construction is given in the following language:

"I do not consider that the statute has reference to transfers made upon a valuable consideration, but that it relates merely to voluntary transfers without consideration, for the tax is not one upon property, but upon the right of succession. Matter of Dows, 167 N. Y. 227. 60 N. E. 439, 52 L. R. A. 433, 88 Am. St. Rep. 508. A payment of an obligation dependent upon a valuable consideration is not a succession in any sense."

In Knowlton v. Moore, 178 U. S. 41, 20 Sup. Ct. 747, 44 L. Ed. 969, Mr. Justice White, speaking of the language under consideration, incidently says:

"This is made clearer by considering that in the very same section the tax is described as being upon 'any interest which may have been transferred by deed, grant, bargain, sale or gift, made or intended to take effect in possession or enjoyment after the death of the grantor or bargainor, to any person or persons.' etc.; that is to say, whilst the law places the duty on any legacy or distributive share passing by death, it puts a like burden on gifts which may have been made in contemplation of death and otherwise than by last will and testament."

And again, in Vanderbilt v. Eidman, 196 U. S. 480, at page 493, 25 Sup. Ct. 330, at page 334, 49 L. Ed. 563, "as to this second class" the one which it is claimed included the tax in question, "the statute specifically makes the liability for taxation depend not upon the mere vesting in a technical sense of the title to the gift, but upon the actual possession or enjoyment thereof." The statute of Illinois is very -similar to the war revenue act, and in Merrifields' Estate v. State, 212 Ill. 400, 72 N. E. 446, the language was interpreted to mean gifts; the court saying:

"The statute provided in case of gifts that an inheritance tax shall be collected if (1) the gift was made in contemplation of the death of the donor, or (2) was intended to take effect in possession or enjoyment after the death of the donor."

It thus appears that the courts of three different states at least have construed language either identical or similar to that in question, as meaning transfers without consideration, and that the Supreme Court of the United States has intimated a similar construction. Furthermore, some of these decisions were rendered just prior to the passage of the revenue act of 1898. It must, therefore, be presumed that its framers were familiar with such interpretation, and that the statute was passed with reference thereto. This is the presumption of law. Willis v. Eastern Trust Co., 169 U. S. 295, 307, 308, 18 Sup. Ct. 347, 42 L. Ed. 752; Capital Traction Company v. Hof, 174 U. S. 36, 19 Sup. Ct. 580, 43 L. Ed. 873.

I feel justified, therefore, in holding that the words "deed, grant, bargain, sale or gift," as used, referred, each and all of them, to trans-

fers without consideration, and operative by way of gift. Irrespective, however, of the authorities referred to, such would seem to be their natural construction when taken in connection with the context. That Congress did not intend under this section to tax transactions made in the ordinary course of business upon a valuable consideration is apparent, not only because the words "deed, grant, bargain and sale" are so connected with the word "gift" as to invoke and require an application of the maxim, "noscitur a sociis," but also because whatever taxes were intended to be imposed by the act upon such transactions were provided for by a subsequent part of the act which required stamps to be affixed upon deeds, contracts, etc., at a specified rate. Furthermore, the latter part of section 29 of the act is but the complement of the earlier part. The one embraces gifts, above a certain amount, made through the medium of a will, the other gifts, otherwise made, that come into possession and enjoyment at the death of the grantor or bargainer, as the donor is there called. It is obvious that, if the section had merely provided that personal property passing by will should be taxed, the intended scheme of taxation would have been a complete failure, for the reason that deeds and grants, by way of gift, to take effect at the death of the grantor, would or might have been substituted for wills in order to evade the tax.

Attention will now be given to the character and effect of the partnership agreement. It seems to me impossible to say that the interest of John I. Blair, which passed to De Witt C. Blair, thereunder was a gift. Valuable considerations are expressed therein, and whether adequate or inadequate is immaterial; but, if material, it would be quite impossible to say that they were inadequate. The considerations moved, not only between John I. Blair and De Witt C. Blair, but from them, and each of them, to all of the other partners, and vica versa. What these considerations were, or how valuable they were, we do not know; nor is it at all necessary to figure out in dollars and cents their actual value. They were mutual, and depended upon mutual covenants. Neither John I. Blair, nor his son, nor the two together, could have in any degree abrogated, impaired, or altered the contract. Any such abrogation, impairment, or alteration could only have been effected by the unanimous consent of all the parties thereto. Each partner had an equal interest in its maintenance, and equal power to prevent its alteration. In brief, it had all of the qualities which render any contract which has been duly executed by parties sui juris, and for a valuable consideration, unimpeachable. Under it John I. Blair was in effect a life tenant only of his interest therein, and De Witt C. Blair was remainderman. The former during its continuance could not have disposed of his interest in the partnership by sale or by will, contrary to the terms of the agreement, because the entire disposition thereof had already been irrevocably made in case his death should happen, as it did, during the partnership period. Hence his will, which by the way was executed some time prior to the partnership agreement, did not transfer such interest to his son. Dying as John I. Blair did, during the partnership period, the utmost that his will could have been made to speak would have been but to echo what the contract had already spoken. Upon his death, eo

instante, his interest in the partnership property became De Witt C. Blair's without the intervention of bill of sale, assignment, transfer, or will. The agreement, as I interpret it, executed itself. It provided that the capital of John I. Blair in the firm of Blair & Co., and any increase or profits thereon, should, upon his 'death, "become transferred to, vested in and owned by the said De Witt C. Blair, absolutely as his property." If we break up the sentence into its component parts, its interpretation may perhaps be more apparent. It would then read: The interest of John I. Blair shall, upon his death, become transferred to De Witt C. Blair absolutely as his property. It shall become vested in said De Witt C. Blair absolutely as his property, and it shall become (or be) owned by the said De Witt C. Blair absolutely as his property. My conclusion upon this branch of the subject, therefore, is that the partnership agreement was an irrevocable self-executing contract; but whether self-executing or not, upon its delivery De Witt C. Blair, had vested rights thereunder in the interest of John I. Blair in the partnership property, defeasible only upon the survivorship of John I. Blair, beyond the partnership period, which rights could not be divested by him by will or otherwise. Such being the case, the tax imposed thereon was unwarranted and illegal. In the Matter of Baker, 83 App. Div. 530, 82 N. Y. Supp. 390, affirmed 178 N. Y. 575, 70 N. E. 1094, on the opinion below, the facts, briefly stated, were these: Baker made an antenuptial agreement by which he agreed to give his intended wife $1,000 on the date of their marriage, and to provide by his will for the payment to her from his estate of $20,000, which she on her part agreed to accept in lieu of dower. Baker died intestate. The question presented to the court was as to the taxability of the $20,000 paid to the widow under said agreement. In determining this point the court said:

"It will doubtless be conceded that the respondent's claim is not one which is dependent for its validity upon a deed or grant of any kind, and, furthermore, that it is not testamentary in its character, although it did not become due and payable until after the death of her husband. It was simply the outgrowth of the contract entered into between the decedent and the claimant, which was founded upon a perfectly good and valuable consideration. * * * It would seem to follow, therefore, that a claim arising from such a source is in the nature of a debt against the estate, and, as such, enforceable like any other debt. * * * But it is said that the contract was entered into in contemplation of, and was not intended to take effect in possession or enjoyment until after, the death of the obligor. This in a certain sense is doubtless true, as it would be of any other form of debt the payment of which was deferred until after the death of the debtor, but this does not affect its validity, or alter its character. * * * Neither, in our opinion, does it subject the debt to taxation under the act in question unless it can be shown that the agreement was entered into in bad faith, and with some evasive intent. * * *"

Another case bearing upon this point is Matter of Demers, 41 Misc. Rep. (N. Y.) 470, 84 N. Y. Supp. 1109. The facts in that case were that Demers contracted with the mother of his natural child that if the child were surrendered to him, and he was permitted to have charge of her, then upon his death all his property should belong to the child. Demers died intestate. His natural daughter thereupon obtained a judgment awarding specific performance of the contract which he had made with the mother. The question presented was whether any suc-

cession tax could be imposed under such judgment. The court held that neither the transfer by the intestate laws to the next of kin, nor to the complainant in the suit under the judgment, was taxable, and in reaching its conclusion used this language:

"No doubt the legal title to the property of the deceased did pass by the intestate laws to his next of kin, but such holding by them was in trust for the equitable owner, Mrs. Drouin, and was a mere naked title not coupled with a beneficial interest, and such transfer would not be taxable under the act in question. Johnston v. Spicer, 107 N. Y. 185, 13 N. E. 753. From the date of the death of Demers to the date of the judgment of the Supreme Court, Mrs. Drouin, was the equitable owner of the property of the deceased and upon the rendition of such judgment she was the legal owner of such property and the same passed to her not by will or by the intestate laws but by virtue of the contract obligation which Demers entered into for a valuable consideration in 1862. * * * This transfer was not by gift since the Supreme Court has declared the contract to have had a valuable consideration, but was through a contract of bargain and sale."

To the same effect is the Matter of Craig, 97 App. Div. 289, 89 N. Y. Supp. 971, affirmed 181 N. Y. 551, 74 N. E. 1116, upon the opinion below. It there appeared that in 1875, Craig made a marriage settlement of all of his property under which the income was payable to him during his life, and at his death the principal was to be paid to his widow and the issue of the marriage, in certain specified proportions. The children of the marriage were all born before May 9, 1885. His entire estate was transferred in accordance with the terms of the will, and the question presented for solution was whether or not such transfers were taxable. The court said:

"The point presented by the appeal is that the right as a property right to take the gifts when the time for possession and beneficial enjoyment should ultimately arrive had fully accrued at the date of the marriage and the birth of the children free from any existing tax upon the transfer regarded either as a transfer then made or contemplated in the future, and that subsequent legislation imposing such a tax must be deemed unconstitutional, as in effect the taking of private property for public use without compensation or as impairing the obligation of a contract. Const. N. Y. art. 1, § 6; U. S. Const. art. 1, § 10, subd. 1. In other words, the appellants contend that at least as early as May 9, 1885, they had acquired their rights by irrevocable deed; that such rights, whether vested or contingent, then constituted present property interests in future estates which were vested in the sense that they were secured to them by deed, subject only to contingencies as to time and survivorship; that incident to the ownership of such property was the absolute right to its acquisition in possession and enjoyment at the stipulated time; and that such ultimate right of possession and enjoyment, being absolute and not merely privileged, could not afterwards be taxed by the state because of well-settled principles of constitutional law. I am inclined to the view that the contention is sound. In the discussion the appellants must be regarded on May 9, 1885, as being in the same position as they would have been in if the remainders had been acquired by purchase instead of gift; and it cannot be that the state can levy an assessment upon the right of a citizen to enjoy the fruits of a prior purchase which, when made, was wholly free from such an imposition."

In the Matter of Pell, 171 N. Y. 48, 63 N. E. 789, 57 L. R. A. 540, 89 Am. St. Rep. 791, the decedent died in 1863, leaving his property to his widow for life with remainders over at her death. She died in 1899. There was no transfer tax law in New York when decedent died, but in 1899, prior to the death of the widow, the following provision was enacted.

"All estates upon remainder or reversion which vested prior to June 30, 1885, but which will not come into actual possession or enjoyment of the person or corporation beneficially interested therein, until after the passage of this act, shall be appraised and taxed as soon as the person or corporation beneficially interested therein shall be entitled to the actual possession or enjoyment thereof."

An attempt was made to tax the remainders under the act just referred to. The court said:

"That, where there was a complete vesting of a residuary estate before the enactment of the transfer tax statute, it cannot be reached by that form of taxation. In the case before us it is an undisputed fact that these remainders had vested in 1863, and the only contingency leading to their divesting was the death of a remainderman in the lifetime of the life tenant, in which event the children of the one so dying would be substituted. If these estates in remainder were vested prior to the enactment of the transfer tax act, there could be in no legal sense a transfer of the property at the time of possession and enjoyment. This being so, to impose a tax based on the succession would be to diminish the value of these vested estates, to impair the obligation of a contract, and to take private property for public use without compensation."

In the Matter of Vanderbilt, 172 N. Y. 69, 73, 64 N. E. 782, the court, referring to the Pell Case, said:

"In that case the interests of the devisees and legatees attempted to be taxed were given by the will of the testator, who had died long prior to the enactment of any inheritance tax. Technically they may have been, and probably were, vested subject to be divested by death before the demise of the life tenant, but in the ordinary sense of the term they were contingent; that is to say, it was impossible to determine who would actually enjoy the property until the death of the life tenant. Nevertheless, the interests of the devisee accrued on the death of the testator, and at that instant, and were immune from legislative attack, whether contingent or vested."

In the case at bar I think the plaintiff's rights accrued at once the partnership agreement was entered into. They were absolute and irrevocable so far as the parties were concerned, and were contingent only upon the happening of an event which did happen. The case appears to me to be within the principle laid down by the above authorities.

My conclusion, therefore, is that the fund taxed accrued to De Witt C. Blair, under an irrevocable contract entered into prior to the passage of the war revenue act, which agreement was based upon valuable and sufficient considerations which were contractual, and that said fund was transferred by said contract, and that such transfer did not constitute a gift within the meaning of said act; further, that the partnership agreement was self-operative, and operated, independently and without the aid of the will of John I. Blair, to transfer to De Witt C. Blair immediately upon the death of John I. Blair the fund in question. Furthermore, since the rights of De Witt C. Blair rested in contract, and accrued at its inception, the same result would be reached, even if technically and momentarily such rights, while in transit to De Witt C. Blair, their grantee and owner, rested in the executor of John I. Blair.

Other points have been raised, and elaborately argued by the counsel of the plaintiff, but under the circumstances it is unnecessary to discuss them.

I accordingly find for the plaintiff and against the defendant in the sum of $29,729.97, being the amount of the tax paid, besides interest thereon from July 2, 1906, the date of its payment, until judgment shall be entered hereon.